■ ESTELLE PINTUS, Appellant-Respondent, v FRED M. PINTUS, Respondent-Appellant. — In a matrimonial action, (1) the plaintiff wife appeals, as limited by her brief, from so much of an order of the Supreme Court, Westchester County (Ruskin, J.), dated March 29, 1983, as granted that portion of the defendant husband's cross motion which was for a suspension of the maintenance payments defendant was required to make to her pursuant to a stipulation of settlement incorporated into, but not merged with, a judgment of divorce between the parties, to the extent of suspending such payments for the period from May 21, 1982 until November 1, 1982, when he was unemployed, and (2) the defendant husband cross-appeals, as limited by his brief, from so much of the same order as denied that portion of his cross motion which was for a downward modification of his maintenance obligations under the stipulation of settlement and judgment; as directed the County Clerk of Westchester County to enter a money judgment in favor of plaintiff against him for the sum of $3,150, representing his arrears in maintenance payments from November 1, 1982 until March 1, 1983, with interest from the latter date; and as awarded plaintiff $1,200 in counsel fees.

Order modified, on the law and the facts, by increasing the amount of the money judgment that the County Clerk of Westchester County is directed to enter against defendant pursuant to the second decretal paragraph thereof by the sum of $4,025, making a total money judgment of $7,175, with interest from March 1, 1983. As so modified, order affirmed, without costs or disbursements. The findings of fact by Special Term are affirmed, except where specifically indicated below,

The parties entered into a stipulation of settlement, which was read into the record in open court and which was incorporated into, but not merged with, a judgment of divorce between

the parties dated March 5, 1982. The stipulation, *inter alia,* required defendant to pay plaintiff $175 per week in maintenance for the period of one year after the entry of the judgment of divorce and $150 per week thereafter until her death, remarriage or permanent cohabitation with another man, with the following provision: "The husband reserves his rights under the Domestic Relations Law, Section 236(b) in the event of the loss of his job, disability or retirement at age sixty-five to apply to the court for a change of circumstances under the provisions of Section 236(b)".

By order to show cause, dated May 27, 1982, plaintiff moved for an order holding defendant in contempt for failing to comply with various provisions of the stipulation of settlement and the divorce decree, not including the provision relating to maintenance. In addition to opposing plaintiff's motion, by affidavit sworn on June 3, 1982, defendant cross-moved, *inter alia,* for a suspension or, in the alternative, a reduction of the maintenance payments he was required to make pursuant to the parties' stipulation and the divorce judgment, asserting that he had been terminated from his employment, effective May 21, 1982. Plaintiff submitted a reply affidavit, dated June 10, 1982, in which she sought enforcement of the maintenance provisions of the stipulation and divorce decree, including an order requiring defendant to pay the arrears which had accrued up until that date. Defendant admitted, during the hearing before Special Term on the maintenance issue, that he unilaterally ceased making maintenance payments to plaintiff after he became unemployed.

We conclude that a party seeking a modification of the maintenance provisions of a divorce decree reflecting the terms of a stipulation of settlement, which has been incorporated into, but not merged with that judgment, should be required to demonstrate that the continued enforcement of those provisions previously agreed to by the parties would create "extreme hardship". This is the same standard that a party is required to meet to obtain a modification of the maintenance provisions of a judgment of divorce reflecting the terms of an unmerged separation agreement, pursuant to section 236 (part B, subd 9, par b) of the Domestic Relations Law. That statutory provision reads in pertinent part: "Where, after the effective date of this part, a separation agreement remains in force no modification of a prior order or decree incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the decree or order as modified shall supersede the terms of the prior agreement and

decree for such period of time and under such circumstances as the court shall determine". Previous decisions have held that stipulations of settlement, which have been incorporated into, but not merged with, the judgment of divorce, share the contractual characteristics of surviving separation agreements (see *Kleila v Kleila,* 50 NY2d 277, 283; *Standley v Standley,* 83 AD2d 863, 864; *Goldring v Goldring,* 73 AD2d 955, 956; *Elyachar v Elyachar,* 43 AD2d 832, 833; *Vranick v Vranick,* 41 AD2d 663; *Mutinelli v Mutinelli,* 114 Misc 2d 511, 514). It should be noted that the above-quoted portion of the Domestic Relations Law (§ 236, part B, subd 9, par b) makes a significant change in the prior law regarding the modification of the maintenance or alimony provisions of unmerged separation agreements and stipulations of settlement, by permitting the court to supersede the applicable terms of the agreements themselves, as well as the judgments of divorce into which they are incorporated (see *Mutinelli v Mutinelli, supra; Tuckman v Tuckman,* 112 Misc 2d 803). The fact that the language of the provision in the parties' stipulation authorizing defendant to apply to the court for a modification of its terms refers to a "change of circumstances" does not compel the use of a standard other than "extreme hardship", as the parties agreed to be bound by the determination of the court pursuant to the applicable provisions of part B of section 236 of the Domestic Relations Law.

Under the circumstances presented at bar, Special Term erred in suspending defendant's maintenance obligations during the period of over five months that he was unemployed, from May 21, 1982 to November 1, 1982. We conclude that, although defendant's unemployment created a financial strain, he failed to sustain his burden of proof that he experienced the "extreme hardship" required to obtain a suspension or downward modification of his maintenance obligations pursuant to the applicable provisions of the Domestic Relations Law (§ 236, part B, subd 9, par b). This position is supported by the following findings of fact made by Special Term, with which we concur. The Justice at Special Term estimated that defendant's gross income for the year of 1982 from all sources was over $32,000, not significantly lower than his gross income of $34,602.90 for 1981, as stated on his Federal income tax return for that year. It should be noted that, during his period of unemployment, defendant received income other than unemployment compensation, including interest from the substantial amount of funds he maintained in bank accounts. The Justice at Special Term observed in his decision that: "it seems inequitable to permit defendant to completely suspend his obligations to plaintiff on the one hand and to permit his savings accounts to gather interest and in-

crease on the other hand". Defendant owned a residence valued at $135,000, on which he had an outstanding mortgage of $78,000, throughout his period of unemployment. We concur with the finding of Special Term that defendant was able to meet "other obligations including sending his daughter to camp, making payment on account of his legal fees, continuing his recreational activities and maintaining for the most part his existing standard of living while unemployed". Indeed, it appears that plaintiff was the only individual who was required to suffer a major decline in her standard of living while defendant was unemployed.

Defendant, who was trained as a mechanical engineer, had a work history of temporary assignments which were often followed by periods of unemployment, although he asserted that the five months that he was unemployed during 1982 was the longest such period during his entire career. He admitted, however, that in February, 1982 he entered into the stipulation of settlement with plaintiff, containing the maintenance provisions at issue, with the knowledge that his job at that time was a temporary assignment. Defendant voluntarily terminated his unemployment benefits in early November, 1982, when he became a self-employed engineering consultant. Accordingly, the money judgment which the County Clerk of Westchester County is directed to enter against defendant must be increased by the sum of $4,025, with interest, representing the arrears which accrued when defendant unilaterally suspended his maintenance payments during the 23 weeks that he was unemployed.

We concur with the conclusion of Special Term that defendant did not present sufficient evidence to justify a permanent suspension of maintenance payments. The award of $1,200 in counsel fees to enable plaintiff to defray part of the costs she incurred in enforcing the stipulation of settlement and the judgment of divorce was also proper (see Domestic Relations Law, § 238). Rubin, J. P., Boyers, Lawrence and Eiber, JJ., concur.