In the Matter of RHODI S. COHEN, Appellant, v MICHAEL SELETSKY, Respondent.

Second Department, November 21, 1988

**APPEARANCES OF COUNSEL**

*Seligman & Seligman (Doris Seligman* of counsel), for appellant.

*Field & Field (Marcia K. Field* of counsel), for respondent.

**OPINION OF THE COURT**

RUBIN, J.

On this appeal we are asked to decide whether the Family Court may apply the standard of a subsequent change in circumstances when it reviews a request for modification of maintenance obligations under a judgment of the Supreme Court which incorporates but does not merge the terms of a stipulation of settlement entered into by the parties after the effective date of the Equitable Distribution Law, July 19, 1980. We hold that the Family Court may not apply this lesser standard, but is constrained to apply the standard that the Supreme Court is mandated to follow upon review of such an application, namely, extreme hardship.

The appellant and the respondent were divorced pursuant to a judgment of the Supreme Court, Nassau County, dated March 27, 1984. The divorce judgment incorporated the provisions of an oral stipulation of settlement entered into by the parties in open court on January 11, and 12, 1984, regarding, *inter alia,* custody of the parties' three children, maintenance, child support and distribution of the marital assets. Custody of their oldest son was awarded to the respondent and custody of the daughter and youngest son was awarded to the appellant. The divorce judgment, in accordance with the stipulation of

settlement, expressly directed the respondent to pay the appellant maintenance in the sum of $225 per week for five consecutive years and to pay child support to the appellant for the daughter and the youngest son in the sum of $75 per week per child until the respective child attained the age of 21 or was otherwise emancipated. Pursuant to the last decretal paragraph of the divorce judgment, the stipulation of settlement was to survive and not be merged in the judgment and the Supreme Court and Family Court were to have concurrent jurisdiction over the matter for the purpose of specifically enforcing its provisions.

In February 1985, the respondent husband commenced this proceeding in the Family Court for a downward modification of the maintenance provisions of the divorce judgment based upon a change of circumstances. The respondent alleged that his income had decreased due to the loss of his largest account and his expenses had increased due to his remarriage. Additionally, he claimed that the appellant's expenses had decreased, because her boyfriend had moved into her residence, was using the house for his business and was sharing her expenses. Additionally, the respondent petitioned for a modification of the custody provision of the divorce decree. He sought to change legal custody of the oldest son from sole custody in himself to joint custody, predicated upon the fact that the boy was currently residing with the appellant and the respondent was allegedly paying $75 per week for his support.

In March 1985, the appellant cross-petitioned for enforcement of the support and maintenance provisions of the divorce judgment of the Supreme Court. She sought arrears in the sum of $1,800 for maintenance and child support that the respondent had allegedly failed to pay since February 1985.

Pending a disposition of the respective petitions, the Family Court, by order entered March 29, 1985, granted the appellant's application for interim relief to the extent of temporarily ordering the respondent to pay the aggregate sum of $225 per week as child support ($75 per week per child) to the Support Collection Unit effective April 1, 1985.

By order dated August 27, 1985, the Family Court awarded legal and physical custody of the eldest son to the appellant. By a separate order of the same date, the parties' remaining petitions, including a subsequent application by the respondent to reduce the temporary support order of the Family

Court by the sum of $175 due to their daughter's change of residence in June 1985 from the appellant's house to the paternal grandparents' home, were referred to a Hearing Examiner to hear and report.

A hearing was commenced before a Family Court Hearing Examiner on February 18, 1986, at which time the respondent testified. The hearing was continued on March 4, 1986. After testimony was given by the parties' oldest son and the appellant's boyfriend, Mark Hart, the hearing was adjourned until March 10. The respondent had subpoenaed both of these witnesses to testify at the hearing regarding his petition for a downward modification of the maintenance provisions of the divorce decree. Since the respondent's direct examination of Hart could not be concluded until the latter complied with a subpoena duces tecum, which requested the production, *inter alia,* of documents pertaining to his sale of antiques stored at the appellant's residence, an adjournment was necessary to await the disposition of the respondent's pending motion to adjudge Hart in contempt of court for his failure to comply with that subpoena. Additionally, Hart's counsel indicated an intention to reargue at the contempt hearing a previously denied oral application to quash the subpoena as a "fishing expedition" into Hart's finances, which was not relevant to the issue of what contributions, if any, Hart made to the appellant. The respondent and Hart were scheduled to appear on March 10 before Family Court Judge DeMaro in the contempt proceeding.

On March 10, Judge DeMaro directed Hart to deliver subpoenaed documents to the respondent's counsel by March 14 and then adjourned the contempt proceeding to April 1, 1985. The hearing before Hearing Examiner Casher on the respondent's petition for modification and the appellant's cross petition for enforcement of the maintenance and support provisions of the divorce decree was also adjourned to 11:30 A.M. on April 1. This adjournment was attributable in part to the appellant's counsel's purported inability to attend the March 10 hearing due to illness. It is conceded that Hart delivered some of the subpoenaed documents to the respondent's counsel on March 14.

On April 1, at 11:45 A.M., Hearing Examiner Casher reconvened the hearing on the parties' respective petitions. When Hart, the appellant and the appellant's attorney failed to timely appear at the call of the matter, the respondent made an oral motion (1) to prevail on his respective petitions for

modification of the judgment of divorce by deleting the maintenance provision and for modification of the Family Court's temporary support order of March 29, 1985, by reducing the child support by the sum of $75 per week and (2) to dismiss the appellant's petition for enforcement and to vacate arrears. The motion, predicated upon the appellant's default, was granted with a direction to submit a written order on notice to the appellant. By written order, entered April 28, 1986, Hearing Examiner Casher dismissed the appellant's petition for enforcement for failure to prosecute and granted the respondent's petition for modification of the divorce judgment to the extent of vacating the maintenance provision upon finding a change of circumstances. Specifically, the respondent's expenses had increased due to his remarriage and Mark Hart was sharing the appellant's expenses as he was living with the appellant and using the former marital premises for business purposes. The order also modified the temporary order of the Family Court based upon a change of circumstances due to the daughter's residence with the respondent's parents, and ordered the respondent to pay a total of $150 per week for the support of his two sons through the Support Collection Unit with the appellant as the beneficiary.

Prior to the entry of the aforesaid order, the appellant moved to restore the matter to the calendar and to vacate the order entered April 28, 1986. In support of the motion, the appellant's counsel affirmed that she had appeared at the hearing of April 1, 1986, albeit 10 minutes late, and discovered that the Hearing Examiner had already disposed of the petitions. A notice of appearance filed with the clerk of the Family Court corroborated counsel's affirmation. Counsel further explained that she had been suffering from a back injury and unsuccessfully attempted to contact the respondent's counsel at the latter's office the morning of April 1 to advise her that she might be a little late in arriving at the courthouse. She was anticipating an adjournment of the hearing because she believed that Mark Hart and the respondent's counsel had previously agreed to an adjournment. Counsel proffered evidence of the numerous dates since June 1985 when she appeared in the Family Court with regard to the matter and contended that there had been no willful default. In further support of the motion was an affidavit by Mark Hart, who alleged that he had advised the respondent's counsel on March 24 that he would be unable to attend the hearing scheduled for April 1 because his employer required

his attendance at a four-day national sales conference in Sandusky, Ohio. Hart maintained that the respondent's counsel had consented to adjourn the hearing to April 8. It is undisputed that prior to April 1, Hart had similarly advised the Family Court of his inability to attend the scheduled hearing by delivering a letter from his employer to the Administration Office in accordance with instructions from court personnel. In an affirmation in opposition to the motion, the respondent's attorney noted that she had advised the Hearing Examiner on April 1 of Hart's telephone call that he would be out of town on business on the scheduled hearing date, but denied consenting to an adjournment. By order dated May 12, 1986, Hearing Examiner Casher denied the appellant's motion on the ground she had unreasonably neglected and delayed in the prosecution of her petition after the matter was already on trial and there was no affidavit of merits presented or a sufficient excuse for the default.

Subsequently, the appellant timely filed in the Family Court specific written objections to the orders of the Hearing Examiner. She contended, *inter alia,* that it was an abuse of discretion to deny her motion to vacate her default and to restore the proceedings to the calendar. She further argued that the Hearing Examiner had applied an erroneous standard of proof in granting the respondent's petition for a downward modification of the maintenance provisions of a divorce decree which had incorporated, but not merged, the terms of a stipulation of settlement entered into after the effective date of the Equitable Distribution Law. The appellant contended that such a modification must be predicated upon proof of extreme hardship and not the lesser showing of a change in circumstances. By order dated August 8, 1986, Judge DeMaro denied the objections and continued the Hearing Examiner's final order entered April 28, 1986.

■ Upon a review of this record, the facts of this case do not warrant the dismissal of the appellant's cross petition to enforce the maintenance and child support provisions of the divorce decree for failure to prosecute. Here, the default—a 10-minute late appearance at the hearing by the appellant's counsel—was de minimis. The scheduled hearing was to continue with the respondent's direct examination of Mark Hart, a witness subpoenaed by the respondent to testify regarding his petition for modification of the maintenance provision of the divorce judgment. Since Hart could not attend the April 1 hearing due to employment commitments, the appellant's

counsel's reasonable assumption, albeit erroneous, that an adjournment would be granted by the Hearing Examiner and thus, negate the necessity for the appellant's presence at the April 1 hearing, was based upon a misunderstanding that the respondent's counsel and Hart had consented to adjourn the matter to April 8.

Contrary to the Hearing Examiner's finding, the appellant did show her claim had merit. The factual allegations in her verified petition for enforcement of the maintenance and support provisions of the divorce judgment constituted a sufficient affidavit of merits (CPLR 105 [t]; *Salch v Paratore*, 60 NY2d 851; *Bethlehem Steel Corp. v Solow*, 51 NY2d 870, 872). Moreover, the records before the Family Court Judge reviewing the appellant's objections to the Hearing Examiner's order contained a transcript of a proceeding before him on March 29, 1985, regarding the appellant's application for interim relief pending the disposition of the parties' respective petitions, which culminated in his temporary order of support dated March 29, 1985. This transcript discloses that the respondent's attorney had represented to Judge DeMaro that the respondent had been paying the appellant $200 a week as evidenced by proffered checks. However, the maintenance and child support provisions of the divorce judgment required the respondent to pay the aggregate sum of $375 per week. Judicial notice of these court records, which can also be taken for the first time on appeal *(see, e.g., Graffeo v Brenes*, 85 AD2d 656, 657; *Grady v Utica Mut. Ins. Co.*, 69 AD2d 668, 671, n 1; *Schmidt v Magnetic Head Corp.*, 97 AD2d 151, 158, n 3; *see also*, Richardson, Evidence §§ 14, 39 [Prince 10th ed]), clearly demonstrate the merit of the petitioner's claim to recover arrears which accrued under the maintenance and child support provisions of the divorce judgment. Under the circumstances outlined herein, the foreclosure of a meritorious claim to recover such arrears from a trial on the merits based upon a de minimis default attributable to the appellant's counsel's tardiness in appearing at the scheduled hearing and misunderstanding regarding his adversary's consent to an adjournment, particularly in the absence of prejudice to the respondent, was an improvident exercise of discretion *(see, Grincato v Sbarra*, 54 AD2d 685).

We next turn to the issue of what standard of proof should be applied by the Family Court in reviewing a petition for downward modification of the maintenance provisions of a divorce judgment, which incorporated, but did not merge, a

stipulation of settlement entered into by the parties after the effective date of the Equitable Distribution Law. The appellant contends that extreme hardship is the standard of proof to be applied herein in accordance with Domestic Relations Law § 236 (B) (9) whereas the respondent argues that the standard of proof is changed circumstances as set forth in Family Court Act § 466 (c). We agree with the appellant's contention and find that the Hearing Examiner erroneously applied the latter standard of proof in eliminating the respondent's maintenance obligations.

Family Court Act § 466 (c) provides that "[i]f the supreme court enters an order or decree granting alimony, maintenance or support in an action for divorce * * * the family court may * * * (ii) entertain an application to modify the order or decree granting alimony or maintenance on the ground that there has been a subsequent change of circumstances and that modification is required". Domestic Relations Law § 236 (B) (9) (b) provides, in pertinent part: "Where, after the effective date of this part [July 19, 1980], a separation agreement remains in force, no modification of a prior order or judgment incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the judgment or order as modified shall supersede the terms of the prior agreement and judgment for such period of time and under such circumstances as the court determines".

Previous decisions have held that stipulations of settlement, which have been incorporated into, but not merged with, the judgment of divorce, share the contractual characteristics of surviving separation agreements *(see, Kleila v Kleila,* 50 NY2d 277, 283; *Pintus v Pintus,* 104 AD2d 866, 868; *Standley v Standley,* 83 AD2d 863, 864; *Goldring v Goldring,* 73 AD2d 955, 956). Consequently, stipulations of settlement as well as separation agreements entered into after the effective date of the equitable distribution law fall within the scope of Domestic Relations Law § 236 (B) (9) (b) *(cf., Frys v Frys,* 120 AD2d 975; *De Jose v De Jose,* 66 NY2d 804).

If the respondent's application for a downward modification of the maintenance provision of the instant divorce judgment had been made in the Supreme Court, that court would have been mandated to apply the extreme hardship standards set forth in Domestic Relations Law § 236 (B) (9) (b) *(see, Pintus v Pintus, supra; see also, Wells v Wells,* 130 AD2d 487; *Heath v Heath,* 128 AD2d 587). Here the parties' preexisting Supreme

Court divorce judgment directed maintenance payments and granted concurrent jurisdiction in the Family Court to enforce or modify the decree. When an issue pertaining to the support and maintenance provisions in a Supreme Court decree is so referred, "the Family Court stands in the place of the Supreme Court and is authorized to determine the issue and make any disposition that the Supreme Court could have made" *(see, Foster v Foster,* 122 Misc 2d 67, 69; *Matter of Robert T. v Marcia T.,* 98 Misc 2d 557). Since the Supreme Court is mandated to follow the standard of extreme hardship set forth in Domestic Relations Law § 236 (B) (9) (b) when disposing of an application to modify the maintenance provision of a divorce judgment which incorporates but does not merge therein the terms of a stipulation of settlement entered into after July 19, 1980, the Family Court is similarly constrained to apply this standard of proof *(see, Foster v Foster, supra).*

It is noteworthy that Domestic Relations Law § 236 (B) (9) (b) made a significant change in prior law regarding the modification of spousal support provisions of unmerged separation agreements and stipulations of settlement by permitting the Supreme Court to supersede the applicable terms of the agreements themselves, as well as the judgments of divorce into which they are incorporated *(Pintus v Pintus,* 104 AD2d 866, 868, *supra; Busetti v Busetti,* 108 AD2d 769, 771; *see also, Mutinelli v Mutinelli,* 114 Misc 2d 511; *Tuckman v Tuckman,* 112 Misc 2d 803). Prior to the enactment of the Equitable Distribution Law, the Supreme Court and Family Court could modify the alimony provisions of a divorce judgment downward upon a showing of a substantial change in circumstances, but such modification did not divest the supported spouse of the right to pursue an action for breach of contract to recover the difference between the amount provided for in an unmerged separation agreement and the reduction directed by the court *(see, Goldman v Goldman,* 282 NY 296; *King v Schultz,* 29 NY2d 718; *Galyn v Schwartz,* 77 AD2d 437, *mod on other grounds* 56 NY2d 969; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236A:8, at 165). "Just before the enactment of the Equitable Distribution Law, some courts, while recognizing the right of the supported spouse to maintain and prevail upon a breach of contract action, have attempted to achieve a measure of justice by restricting the supported spouse's ability to collect more than the downwardly modified support" *(see,*

Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, 1988 Pocket Part, Domestic Relations Law C236B:45, at 34; *see, e.g., Mackey v Mackey,* 58 AD2d 806; *Matter of Jacqueline S. v Gerald C.,* 70 Misc 2d 19). While the law predating the effective date of the Equitable Distribution Law still governs separation agreements and stipulations of settlement made prior to July 19, 1980 *(see,* Domestic Relations Law § 236 [B] [9] [b]; *De Jose v De Jose,* 66 NY2d 804, *supra; Frys v Frys,* 120 AD2d 975, *supra),* the enactment of Domestic Relations Law § 236 (B) (9) (b) was an attempt by the Legislature to alleviate the unfairness that existed under the former law with respect to maintenance provisions of separation agreements and stipulations of settlement made after July 19, 1980. Domestic Relations Law § 236 (B) (9) (b) permits a Supreme Court-ordered modification of the maintenance provision of a divorce judgment to supersede the maintenance terms of the agreement for such time and under such circumstances as the court determines upon a showing of extreme hardship, which is a stricter standard of proof than a substantial change of circumstances. In effect, this statutory provision allows the Supreme Court to suspend the maintenance provisions of a separation agreement or a stipulation of settlement for as long as necessary and to the extent necessary and, thereby, precludes a breach of contract claim *(see, Busetti v Busetti,* 108 AD2d 769, 771, *supra).* \*

Unlike a Supreme Court-ordered modification of the maintenance provisions of a divorce judgment, a Family Court-ordered modification can neither supersede the maintenance provision of a surviving separation agreement nor divest the supported spouse of the right to sue in a plenary action on the contract to collect the difference between the amount provided for in the separation agreement and the reduction directed by the court. The distinction is attributable to the subject matter jurisdiction of the Family Court. The Family Court is a court of limited jurisdiction and, thus, is without power to set aside or modify the terms of a separation agreement *(see, Matter of Brescia v Fitts,* 56 NY2d 132, 139; *Kleila v Kleila,* 50 NY2d 277, 282, *supra; see also, Burtch v Burtch,* 98 AD2d 704; *Schiller v Mann,* 44 AD2d 686). Notwithstanding this distinction between Supreme Court and Family Court-ordered modifi-

---

\* We do not address the constitutional issue pertaining to the State's power to modify contractual rights, as the issue was not raised on this appeal *(see, Busetti v Busetti,* 108 AD2d 769, 771; *see also, Kleila v Kleila,* 50 NY2d 277).

cations of maintenance provisions of divorce judgments, in our opinion, the embodiment of a public policy found in Domestic Relations Law § 236 (B) (9) (b) should be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of the law (see, Matter of Steinberg v Steinberg, 18 NY2d 492, 497) and to preclude forum shopping. This public policy requires a showing of extreme hardship before the maintenance provisions of a divorce judgment, incorporating therein the terms of an unmerged separation agreement made after July 19, 1980, can be modified.

Accordingly, the Hearing Examiner erred in eliminating the maintenance provisions of the parties' divorce judgment based upon a mere change of circumstances. Since the parties' 1982 stipulation of settlement has survived, and was not merged with the judgment of divorce, the respondent must demonstrate that the continued enforcement of the maintenance terms of the divorce judgment will create an extreme hardship to him.

For the foregoing reasons, the respondent's petition of downward modification of the maintenance provision of the divorce judgment and the appellant's cross petition to recover arrears for accrued maintenance and child support payments are remitted to the Family Court for a hearing and determination as to whether the respondent has shown that he will suffer extreme hardship if the maintenance terms are not modified and the amount, if any, of arrears which accrued for child support and maintenance payments (cf., Heath v Heath, 128 AD2d 587).

BROWN, J. P., EIBER and SULLIVAN, JJ., concur.

Ordered that the order is reversed, without costs or disbursements, the appellant's cross motion is reinstated, and the matter is remitted to the Family Court, Nassau County, for further proceedings in accordance with the opinion herewith.