OPINION OF THE COURT
Edmund A. Calvaruso, J.
Mr. Iffland comes to this court requesting a downward modification of maintenance. He willingly and knowingly entered into a contractual agreement on the 28th day of October 1982 to pay $1,000 per month. The agreement provided maintenance would only be reduced upon the wife reaching the age of 62 and then decreased by subtracting an amount equal to her Social Security benefits.
Plaintiff was an employee of Kodak earning $50,000 per year. He is now 53 years old and has taken early retirement from Kodak as of November 27, 1991. The lump-sum value of $198,738 for pension payment, plus lump sum of $68,069 for bridge payment, plus lump sum of $60,288 for special separation payment, plus lump sum of $33,265 for SIP payment, plus lump sum of $2,504 for KESOP payment — totals $362,864 of payment available.
Plaintiff claims "extreme hardship”.
A judgment of divorce followed on the 8th day of September 1983. The separation agreement was incorporated, but did not merge into the judgment of divorce pursuant to the agreement.
Subsequent to electing early retirement, the plaintiff moves this court for a downward modification. He asks the court to reduce the monthly amount of maintenance paid by the plaintiff to the defendant based on his premature retirement. To support his request, plaintiff points to Domestic Relations Law § 236 (B) (9) (b).
The applicable language of section 236 (B) (9) (b) reads as follows: "Where, after the effective date of this part, a separation agreement remains in force no modification of a prior order or judgment incorporating the terms of said agreement shall be made as to maintenance without a showing of ex *663 treme hardship on either party, in which event the judgment or order as modified shall supersede the terms of the prior agreement and judgment for such period of time and under such circumstances as the court determines.”
The focus of the motion by both parties centers on three contentions. First, whether plaintiff presents a showing of extreme hardship. Second, assuming the facts offered support a firiding of extreme hardship, whether the burden was the result of avoidable circumstances. Third, whether the statute itself runs afoul of constitutional limitations on the State’s limited power to tamper with contractual rights. The concentration of this decision will be on the last of these issues.
Both parties have argued the constitutionality of Domestic Relations Law § 236 (B) (9) (b) in their memoranda of law.
Constitutionality of Section 236 (B) (9) (b)
Background
The Equitable Distribution Law had an effective date of July 19, 1980. An important decision came down from the high court only one and a half months before the effective date of the new Equitable Distribution Law.
The Warnings of Kleila
The Court of Appeals in Kleila v Kleila (50 NY2d 277, 283-284 [1980]) stated "any attempt to confer upon a court of any jurisdiction within the United States broad powers to modify the terms of a separation agreement might well run afoul of constitutional limitations upon the State’s power to tamper with vested contractual rights.” The message of Kleila suggests constitutional rights cannot be intruded upon by the State under an expansive guise permitting modification of separation agreements. The decision is grounded upon the constitutional right to contract.
The Constitutional Right to Contract
The United States Constitution states: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts”. (Art I, § 10, cl [1].)
As is apparent, the Constitution pursuant to the Contract Clause prohibits the States from legislating any law that would impair a contractual obligation of private parties. As *664 one constitutional expert explains: "The contract clause restricts the power of state or local governments to modify the obligations of parties to a private contract or to modify the obligations under a government contract with private parties * * * State and local governments are not absolutely prohibited from modifying the obligations in private or public contracts. In order to protect the health, safety, and welfare of its citizens, a state may enact legislation which impairs contracts under certain conditions.” (2 Rotunda, Nowak and Young, Constitutional Law, Substance and Procedure, § 15.8, at 102 [1986].)
Thus, since there have been recognized certain limitations upon this constitutional right, the court must evaluate the challenged legislation. The analysis of the Contract Clause issue is generally a three-step analytical process:
(1) Has the State law operated as a substantial impairment of a contractual relationship?
(2) Is the State law designated to promote a significant and legitimate public purpose?
(3) In adjusting the contractual obligations and rights to promote a significant and legitimate public purpose, has the law reasonably and narrowly tailored the means rather than unjustifiably attempting to change the obligations of parties to a private contract? (See, 2 Rotunda, Nowak and Young, op. cit.)
Without question, the statute at hand impairs the parties’ ability to contract. The terms and conditions, bargained for at great length, may be suspended with no more than a one-time application to the court and the scribble of Judge’s signature on an order. Whether the effect of such bold and invasive measures act to undermine the confidence the public or private party has in their guaranteed right to contract remains to be seen. The hand of police power under the guise of public good or legislation for the health, safety and well-being of citizens — poses the potential for considerable damage to individual’s right to negotiate a property settlement without the unsuspecting onslaught of State interference. A deal should be a deal. It should not be interfered with absent a strong public purpose.
The sanctity of contracts was deemed so vital to personal security that in the 55 years after the Supreme Court’s first Contract Clause decision, 22 States have put such provisions directly in their own Constitutions and all of the States have *665 taken measures to protect contracts generally. (2 Levy, Karst and Mahoney, Encyclopedia of American Constitution, at 493 [1986].)
No effort is made here to carve a rigid differentiation of remedies to contract versus substantive obligations of contract. Legal scholars, such as renowned Justice Cardozo, have delved into these topics at length. Nor is an expansive discussion of the development of the jurisprudence of the court in the construction of the Contract Clause necessary. Entire treatise articles have been devoted to this topic.
Assuming, as this court finds, the law does constitute a substantial impairment of rights and obligations in a private contract, the law must further a significant and legitimate social purpose. The law in this instance purports to protect an individual against "extreme hardship.” This court is hard pressed to come up with a legitimate purpose more significant than just saving someone from entering into a bad deal. Perhaps with great imagination and creativity one could argue its social purpose is to have wide scale effect to insure confidence in the judiciary and equitable resolution.
Yet, on the other hand, there must be certain and definite obligations which the financial and business community can rely. In fact, these were the same historical motivators of certainty and definiteness that form the basis of establishing the constitutional right from its inception.
Still another argument which strikes the court as especially impressive is the fact that both parties entered this agreement with open eyes. It takes no wizard to anticipate both the likelihood of increasing your income in the future and the fortuity of earning less. In any long-term obligation where the parties are negotiating the terms of the agreement, it is foreseeable that either scenario may occur. This, combine 1. with the ease of adding a few sentences in the agreement providing for an increase or decrease upon a change of income, tends to deflate any significant social purpose.
In addition, the court and the parties had an additional bite at the apple when they specifically chose not to have the contract merge into the decree, but intended to have it withstand the divorce.
Moreover, separation agreements are already subject to the same principles governing all contracts. Namely, they may be set aside upon grounds of unclear or unfair terms, a clear showing of fraud, misrepresentation or duress, or material *666 breaches. (11A Zett-Edmonds-Schwartz, NY Civ Prac ¶ 23.07 [1], at 23-99.)
In bold contrast, the law currently allows, where the separation agreement fails to survive the divorce decree, a modification "upon a showing of the recipient’s inability to be self-supporting.” (Domestic Relations Law § 236 [B] [9] [b].) A plain and obvious social purpose becomes indisputable. Under such circumstances, the State amasses authentic power. There is a need to interpret, define and clarify its prior decree which the parties submitted to the courts by merging their agreement into the decree. Lacking this consent, the courts should not disturb the contract short of either of the parties becoming a public charge.
Next the question is whether the contract obligations were reasonably and narrowly tailored to promote the significant public purpose. The legislation must be a reasonable means to promote the public purpose identified. Our law limits such judicial intervention to "extreme hardship.” Unfortunately what may strike one court as "extreme hardship” may be no more than an austerity budget for another. There must be a narrow and reasonable standard such as the "public charge” exception of the McMains case. (McMains v McMains, 15 NY2d 283 [1965].)
Although no study of the range of circumstances falling within these two words has been presented, it does not take much creativity to argue a plethora of scenarios fit within this standard.
Questionable Constitutionality Long Acknowledged
Legal scholars in New York have questioned the constitutionality of Domestic Relations Law § 236 (B) (9) (b) since its inception. (See, Scheinkman, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:45, 1992 Cum Ann Pocket Part, at 101-105.)

Busetti v Busetti

Again in Busetti v Busetti (108 AD2d 769 [1985]) the Court makes comment of a constitutional question regarding section 236 (B) (9) (b) but does not reach the issue because it has not been raised on appeal. There the Court held the stipulation, which was incorporated but not merged with the judgment of divorce, was capable of modification by the court upon a *667 showing of extreme hardship — despite words in the bargain stating the five years of maintenance was "absolute.” The pith of Kleila (supra) is exposed in the specific footnote reference to the limitations of State interference with vested contractual rights.

Cohen v Seletsky

Once more in Cohen v Seletsky (142 AD2d 111 [1988]) the Court failed to reach the constitutionality of section 236 (B) (9) (b). The Court there ruled the Family Court was held to the extreme hardship standard. One more time the court disclaims any conflict with contract rights inserting an almost boilerplate footnote stating "We do not address the constitutional issue * * * as the issue was not raised on * * * appeal.” (Supra, at 120, n.)
A slew of cases have been decided applying the "extreme hardship” standard: Lamberti v Lamberti (158 AD2d 449 [1990]); Heath v Heath (128 AD2d 587 [1987]); Pintus v Pintus (104 AD2d 866 [1984]). However even as late as 1987, the courts continue to question whether this provision as to maintenance is constitutional. (Toss v Voss, 132 AD2d 545, 546 [2d Dept 1987].) However, since the issue has not been raised on appeal, the court has not had jurisdiction to review it.
This court recognizes legitimate health, safety or welfare concerns exist to infringe upon the constitutional right to contract. However, the standard as enacted by our State Legislature is devoid of a clear purpose and further fails to narrowly and reasonably tailor its means of achieving that purpose. Typical is the instance of Pintus (supra) where the defendant’s unemployment creates a financial strain but falls short of the extreme hardship requirement. Even more alarming are individuals who fall within the "extreme hardship” standard for simply having made a bad deal, and now ask the court to relieve them of the responsibility of their action.
A separation agreement surviving the judgment of divorce has long shared the characteristics of other contracts. (Standley v Standley, 83 AD2d 863, 864 [1981]; Goldring v Goldring, 73 AD2d 955, 956 [1980]; Elyachar v Elyachar, 43 AD2d 832, 833 [1974].)
Although the court recognizes what some would call "the straight jacket” of preequitable distribution separation agreements (see generally, Tuckman v Hickman, 112 Misc 2d 803, 805 [1982]) the "public charge” exception of McMains v Me- *668 Mains (15 NY2d 283 [1965], supra) does have a significant and legitimate public purpose.
Decision
The court, after consideration and review of the constitutional arguments in relation to the New York standard "extreme hardship”, holds as follows:
(1) Domestic Relations Law § 236 (B) (9) (b) operates as a substantial impairment of the long-standing rights of parties to enter into private contracts.
(2) The law has a questionable public purpose. This court cannot find a significant and legitimate social purpose pertaining to the health, safety or welfare of its citizens which would balance greater than the parties’ individual right of contract.
(3) The law is not reasonably and narrowly tailored. It lacks any subjective guidelines for "extreme hardship” as that term would relate to any legitimate and significant public purpose; and, further fails to provide a framework limiting it to the public purpose which would permit such intrusion into private contracts.
Accordingly, the statute is ruled unconstitutional pertaining to separation agreements surviving the divorce decree and the plaintiff is denied his application for relief.