Walter W. Grunfeld, Appellant, v Audrey F. Grunfeld, Respondent.

Third Department, December 24, 1986

## APPEARANCES OF COUNSEL

*Theodore Fenstermacher* for appellant.

*Franklin A. Josef* for respondent.

## OPINION OF THE COURT

CASEY, J.

An open-court stipulation of settlement in a matrimonial action purporting to equitably distribute the parties' marital property, which is based in part upon erroneous findings of the trial court as to the value of certain marital property, and which results in an award of substantially all of the marital assets to one party while burdening the other party with virtually all of the marital debt, is patently unconscionable. The court has not only the power but the duty to relieve the burdened party from such a stipulation. The trial court, therefore, erred in granting defendant's motion to enforce the stipulation and denying plaintiff's cross motion to set aside the stipulation.

Prior to and throughout the parties' marriage, plaintiff's occupation was as publisher and sole proprietor of a local newspaper in Cortland County. Defendant actively participated in operating the newspaper until the parties' separation. In this divorce action, commenced in January 1981, the parties stipulated that they could obtain cross-divorces by default, and then proceeded to the trial of contested issues of equitable distribution. Following four days of hearings, Trial Term rendered a written decision dividing their property. The court determined that the aggregate marital property should be apportioned equally, a ruling not challenged on this appeal.

It was further determined that plaintiff had separate property of some $14,000, principally his original cost of acquisition of the building and equipment used for operation of the newspaper, and that defendant had separate property worth about $4,000.

Plaintiff was found to have held marital property in his name having an aggregate value of some $195,000 at the time the action was commenced. These assets consisted of the marital residence, worth $34,680 after deduction of the principal balance of a first mortgage, the newspaper building, valued at $17,000 after deduction of the premarital cost of acquisition, a real estate partnership interest of $27,400, and 45 of 105 outstanding shares of stock in a separate printing business, the value of which was fixed at $114,755. The latter valuation was based upon the sale of the husband's shares in that amount, of which some $48,000 was paid in cash and the balance was to be paid in future installments, subject to being offset by a $60,000 trade debt owed by the newspaper to the printing business. As to the newspaper itself, because of the absence of profits over several preceding years and the existence of liabilities in excess of assets, the court ascribed a zero value to it. Marital property held by defendant consisted of insurance proceeds worth $8,000. Since plaintiff held title to assets aggregating $195,000 of the roughly $203,000 value of all marital property, the court directed transfer of some $93,500 from the husband to the wife, in order to effectuate an equal division of marital property, with interest on $67,578 thereof at the rate of 9% per year from the date of the commencement of the action. Trial Term retained jurisdiction to direct implementation of its award in the event that the parties were unable to agree upon the means of dividing the property as ordered.

Subsequently, defendant made a motion for a court-ordered distribution of assets in accordance with Trial Term's decision. Plaintiff, through substituted counsel, cross-moved to modify the decision. On the date fixed for argument of the motions, the parties appeared with their respective attorneys and, after a conference in chambers, a stipulation of settlement was entered into in open court and spread upon the record. The stipulation provided for the withdrawal of the parties' motions, the waivers of plaintiff's right to appeal from the court's decision and of defendant's right to interest on the award, and the conveyance by plaintiff to defendant of the following property in full satisfaction of her claims to equitable distribu-

tion: (1) the marital residence, subject to the first mortgage; (2) the land and buildings containing the newspaper operations and a second-floor apartment, subject to an existing $12,000 mortgage and to the right of the husband to occupy the entire premises under a lease for a stated annual rental; (3) the husband's interest in the real estate partnership; and (4) a promissory note representing the balance of the purchase price of the husband's stock holdings in the printing concern, subject to the $60,000 offset for the debt owed by the newspaper to the printer. Some two months later, defendant moved for enforcement of the stipulation and the entry of judgment pursuant thereto. Plaintiff cross-moved to vacate the stipulation and the court's earlier decision dividing the marital property. Trial Term denied the cross motion in all respects and granted judgment pursuant to the stipulation. This appeal by plaintiff ensued.

We first reject plaintiff's claim that this case is controlled by *Lischynsky v Lischynsky* (95 AD2d 111), where we held that an open-court stipulation, which did not comply with the statutory requirements for an "opting out" agreement (Domestic Relations Law § 236 [B] [3]), could not be used as the basis for a judgment equitably distributing the parties' marital property. This holding is based upon the explicit statutory requirements (1) that unless the parties enter into a formal "opting out" agreement, the court must determine the respective rights of the parties in their separate or marital property and provide for the disposition thereof (Domestic Relations Law § 236 [B] [5] [a]), and (2) that the court must set forth the factors it considered and the reasons for its decision, a requirement that may not be waived by either party (Domestic Relations Law § 236 [B] [5] [g]). In the case at bar, however, Trial Term rendered a written decision in substantial compliance with the requirements of Domestic Relations Law § 236 (B) (5). The record establishes that the stipulation was not intended as a substitute for Trial Term's findings; rather, the stipulation constituted the parties' attempt to effectuate an equitable distribution of marital property based upon those findings. We find no conflict between such a procedure and the requirements of the Domestic Relations Law.

Next, we find no merit in the argument that our scope of review in this case is severely limited by the principle that stipulations of settlement, particularly those made in open court, may only be set aside for "cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident"

*(Hallock v State of New York,* 64 NY2d 224, 230). This list of grounds for granting relief from an open-court stipulation is merely illustrative and not intended to exclude other appropriate grounds. More importantly, *Hallock* did not involve a stipulation between parties in a matrimonial action. Such a stipulation is an agreement between spouses which, unlike an ordinary business contract, involves "a fiduciary relationship requiring the utmost of good faith" *(Christian v Christian,* 42 NY2d 63, 72), and there is no indication that *Hallock* was intended to change the general principles applicable to transactions between spouses. The *Christian* court explained *(supra,* at p 72):* "To warrant equity's intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other's overreaching". The court also noted *(supra,* at p 71) that equity will take cognizance of unconscionable conduct "when warranted" and that an unconscionable bargain is one that no sensible person " 'not under delusion' " would make and that no " 'honest and fair' " person would accept. Although *Christian* dealt specifically with a separation agreement, the court emphasized *(supra,* at p 72):* "There is a strict surveillance of all transactions between married persons"; and the courts generally have recognized that there is no appreciable difference between separation agreements and stipulations of settlement spread on the record in matrimonial actions *(see, e.g., Busetti v Busetti,* 108 AD2d 769; *Pintus v Pintus,* 104 AD2d 866; *Mutinelli v Mutinelli,* 114 Misc 2d 511, 514). Indeed, this court has applied the principles set forth in *Christian v Christian (supra)* in reviewing a stipulation entered in a matrimonial action *(Matter of Collyer v Proper,* 109 AD2d 1010, 1012, *affd* 66 NY2d 382), as have other courts *(e.g., Miller v Miller,* 104 AD2d 403, 404, *lv dismissed sub nom. Robert M. v Angela M.,* 63 NY2d 952). The courts, therefore, have the power, and indeed the duty, under *Christian v Christian (supra)* to relieve a party from an unconscionable open-court stipulation entered in a matrimonial action.

Such a holding is essential to the proper administration of justice. A litigant, in the highly charged atmosphere of a matrimonial action, when faced with the immediate choice of extended public proceedings or stipulation of settlement, will ofttimes opt for the latter course. Once reached, however, the open-court stipulation should not serve to spring the trap that will catch the unwary or the uninformed and bind the litigant forever in an unconscionable situation from which our courts

will not relieve him or her. If no relief for unconscionability is available from an open-court stipulation in a matrimonial action, which by its very nature should be concerned with "equitable distribution", stipulations of settlement will be few indeed, for the competent attorney will not allow his or her client into a potential trap.

Although neither the papers in support of plaintiff's motion to vacate the stipulation nor his brief on appeal use the word unconscionable, we should not exalt form over substance to evade the type of judicial scrutiny called for by the Court of Appeals in *Christian v Christian (supra)*. Plaintiff's motion papers allege that certain errors were made by Trial Term in its findings of facts, upon which the stipulation was based, and that the stipulation was unjust and entered into in an atmosphere not wholly free from undue haste and pressure. These allegations are, in our view, sufficient to raise the issue of unconscionability, particularly in view of plaintiff's consistent expressions of dissatisfaction during the proceeding at which the stipulation was spread upon the record. On appeal, plaintiff again argues that Trial Term's decision contains certain errors and omissions, resulting in a property settlement that is "factually and legally unfair and inequitable", with consequences that are "devastating and catastrophic to plaintiff".

The stipulation was entered into after a trial of the contested issues of equitable distribution and after Trial Term had rendered its decision, which determined, *inter alia,* the value of the parties' separate and marital property. As noted above, the stipulation constituted the parties' attempt to effectuate a distribution of the marital property based upon Trial Term's findings, and the record establishes that, given the court's findings, plaintiff believed he had no choice other than to accept the property settlement embodied in the stipulation. The record also establishes that certain of these findings are erroneous. Thus, in valuing certain shares of stock, found to be marital property, Trial Term used the unadjusted price at which the stock was sold and not the market value of the stock at the time the action was commenced some two years before the sale *(see, Rywak v Rywak,* ·100 AD2d 542); Trial Term failed to take into account a second mortgage on the marital residence, concluding that it represented a business debt; and in valuing the parties' business at zero, despite having found that business debts substantially exceeded business assets, Trial Term failed to take into account all of the business debts *(see, Reiner v Reiner,* 100 AD2d 872, 874-875).

As a result of these errors, the stipulation appears on its face to award defendant substantially all of the marital assets and to burden plaintiff with virtually all of the marital debt. Based upon the record in its present stage of development, however, we are unable to determine whether the stipulation is, in fact, so one-sided and unfair that no rational person, exercising common sense, would make such an agreement and that no fair and honest person would accept it (see, Christian v Christian, supra). We conclude that Trial Term erred in summarily denying plaintiff's motion to vacate the stipulation without holding a hearing on the question of whether the stipulation is unconscionable.

LEVINE, J. (dissenting). We respectfully dissent. The majority remits for an evidentiary hearing solely to determine whether the allocation of the parties' assets and liabilities under the stipulation is so one-sided in favor of defendant as to be unconscionable. Under current analysis of the doctrine of unconscionability, the majority has thus decided that plaintiff raised an issue of fact concerning "substantive" unconscionability, which arises out of the unfairness of the terms of the parties' agreement, rather than "procedural" unconscionability, which focuses on the unfairness of the process of contract formation (see, Matter of State of New York v Avco Fin. Serv., 50 NY2d 383, 390-391; Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters., 58 AD2d 482, 489).

In our view, this court was precluded from considering substantive unconscionability, since the issue was neither preserved for review nor adequately raised on appeal. In his motion papers to set aside the stipulation, plaintiff never expressly invoked unconscionability as a ground, let alone did he set forth any evidentiary facts sufficient for the court to have considered the issue. Rather, the gravamen of his motion was that the stipulation was the product of his mental disturbance and of duress and unilateral mistake. Thus, his moving affidavit states that, when the stipulation was entered into, he was "emotionally shattered and distraught" and "was subject to such pressure and coercion, internal and external, that I did not give my consent to the 'Stipulation' freely, willingly and voluntarily". Similarly, his attorney's supporting affidavit on the motion fails to mention the word unconscionable, but asks that the stipulation be vacated as being the "result of undue haste and pressure, wittingly or unwittingly applied by Defendant and her attorney, which caused or contributed to

Plaintiff's mistaken belief that he had no alternative, on the law and the facts, but to yield to his wife's demands". These generalized, conclusory assertions, unsupported by facts of any specific misconduct, certainly were insufficient under the case law, matrimonial or otherwise, to relieve plaintiff of his stipulation on the basis of duress or mistake. The majority apparently agrees, and correctly so (see, Hallock v State of New York, 64 NY2d 224, Birchwood Towers #1 Assocs. v Haber, 98 AD2d 697, 699; Heimuller v Amoco Oil Co., 92 AD2d 882, 883; Willig v Rapaport, 81 AD2d 862, 864, appeal dismissed 54 NY2d 753; Rado v Rado, 51 AD2d 811; Helwig v Wilkens, 51 AD2d 694, 695, appeal dismissed 39 NY2d 798; Bond v Bond, 260 App Div 781, 782).

The majority concludes, however, that allegations in plaintiff's moving papers to the effect that the stipulation was "unjust" and was made "in an atmosphere not wholly free from undue haste and pressure" sufficiently raised the issue of unconscionability for appellate review. Since the majority apparently finds that these averments were insufficient to raise a triable issue of fact on duress or mistake (the grounds for vacatur actually urged by plaintiff), we are unable to fathom how it can be considered that they sufficiently raised the issue of unconscionability. Moreover, undue haste and pressure at the time of the stipulation, to whatever degree that it may be relevant to unconscionability, clearly can only pertain to *procedural* unconscionability, i.e., the overreaching conduct of defendant in the formation of the parties' settlement agreement. The majority's conclusion that these averments were sufficient to preserve the issue of unconscionability thus becomes even more puzzling, since remittal is not made for trial as to defendant's unfair conduct in the process of formation of the stipulation, but solely on its one-sidedness.

But in any event, the record conclusively refutes any inference of inequitable conduct by defendant in the creation of the stipulation. Plaintiff had previously received what he considered to have been an unfavorable equitable distribution decision rendered by Trial Term after a full evidentiary hearing. Under the stipulation that was offered him, and which he acknowledged on the record that he understood and that it was agreeable to him, the net asset value (as of January 31, 1981, the date of the commencement of the action) of property plaintiff conveyed in full satisfaction of defendant's equitable distribution rights was reduced from the $93,593 required by the court's decision to approximately $80,000 and he was also

relieved of the obligation to pay interest, aggregating about $23,000, on a portion of the award as directed in the decision. There was no misrepresentation or concealment of assets or asset values, all of which had been fully aired at the trial. Plaintiff simply exchanged the speculative advantage of a possible reversal of the equitable distribution decision on appeal for the concrete reduction of his liability under the stipulation by some $36,000. The copious detail of the property and other settlement terms spread upon the record belies plaintiff's naked assertion that the stipulation was the product of undue haste or pressure, and confirms Trial Term's finding that the stipulation was the result of a "lengthy conference between the attorneys in the presence of the court and conferences by each attorney with his client". Plaintiff was represented by independent counsel, experienced in the field of matrimonial law, and had had a period of months following the court's initial decision in which to review the relevant facts and applicable law concerning any errors in that decision. Consequently, there was no triable issue concerning inequitable conduct or concealment upon which the court could have granted plaintiff relief, even if unconscionability had been specifically invoked (see, Wile v Wile, 100 AD2d 932, 934; Nahlik v Nahlik, 74 AD2d 709, 710). As the Court of Appeals stated in Christian v Christian (42 NY2d 63, 71-72): "Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions. Furthermore, when there has been full disclosure between the parties, not only of all relevant facts but also of their contextual significance, and there has been an absence of inequitable conduct or other infirmity which might vitiate the execution of the agreement, courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided."

As the foregoing discussion demonstrates, plaintiff clearly failed to raise a triable issue of either procedural or substantive unconscionability in his motion to vacate the stipulation before Trial Term. His allegations of inequitable conduct by defendant were totally conclusory, patently inadequate and belied by the record. And equally absent from his motion papers are any evidentiary facts showing that, *when the stipulation was entered into,* the allocation of assets and

liabilities was so unfair as to be unconscionable. At the very least, this would have required specific averments of the then current status and values of such assets and liabilities divided under the stipulation. The absence of such a showing by plaintiff before Trial Term should have been dispositive of the issue *(see, Lister Elec. v Incorporated Vil. of Cedarhurst,* 108 AD2d 731, 733).

Likewise, plaintiff failed to specifically argue unconscionability on this appeal, apart from the nebulous statement at the conclusion of his brief that the "consequences" of Trial Term's "decision and judgment" were "devastating and catastrophic". The majority, nevertheless, has *sua sponte* examined the record and has found a triable issue on substantive unconscionability, i.e., that the distribution of the parties' assets and liabilities effected by the stipulation were so one-sided that "no rational person, exercising common sense, would make such an agreement and that no fair and honest person would accept it". It may well be that this court has the power to consider matters *sua sponte (see, Salesian Socy. v Village of Ellenville,* 41 NY2d 521, 523). That power, however, is rarely invoked, and only when the error plainly appears in the record, is fundamental and could not have been refuted if properly raised *(Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 349; *Persky v Bank of Am. Natl. Assn.,* 261 NY 212, 217-219; *Osgood v Toole,* 60 NY 475, 479; *see also, Sega v State of New York,* 60 NY2d 183, 190, n 2; *Matter of Knickerbocker Field Club v Site Selection Bd.,* 41 AD2d 539, 540; Vestal, *Sua Sponte Consideration in Appellate Review,* 27 Fordham L Rev 477).

Applying the foregoing standard for such *sua sponte* consideration on the instant appeal, the record, at the least, would have had to contain clear evidence of the requisite total one-sidedness irrefutably demonstrating that an issue of fact on substantive unconscionability existed. The only factor cited by the majority for such a demonstration is that the stipulation was intended, in substance, to implement Trial Term's original equitable distribution decision and that the decision itself contained serious errors favoring defendant. In our view, this falls far short of showing irrefutably that a triable issue existed as to the unconscionability of the terms of the stipulation. First, as has already been pointed out, the stipulation significantly ameliorated the consequences of the court's decision on plaintiff's finances. More importantly, the record, if anything, actually suggests that the stipulation *did not,* as

inferred by the majority, award defendant substantially all of the marital assets and burden plaintiff with virtually all of the marital debts. It is self-evident that any claim of unfairness in the allocation of assets and liabilities has to be tested on the basis of values as of the April 1985 date of the stipulation. Since plaintiff offered no evidence of those values on the motion to vacate, the available data on values are only those which were adduced at the equitable distribution trial, when the focus necessarily was on the finances of the parties as of January 31, 1981, the date plaintiff started this action *(see,* Domestic Relations Law § 236 [B] [1] [c]). Obviously also, no evidence was introduced at the trial as to the effect of the subsequent stipulation on the parties' respective economic circumstances. Insofar as the evidence peripherally brought out post-1981 financial data, it reveals the following: (1) plaintiff realized an immediate cash return of over $48,000 from the sale of his stock holdings in Our Press, Inc., none of which was he required to share with defendant as a result of the stipulation; (2) out of that $48,000 proceeds, he applied $27,000 to discharge his solely personal liability to the Internal Revenue Service for newspaper employee withholding taxes, theretofore a major debt of the newspaper enterprise; (3) in 1983, despite the necessity of debt-servicing on liabilities of more than $125,000, the newspaper for the first time in several years turned a modest profit of more than $6,000; and (4) according to the testimony and report of plaintiff's accountant, the newspaper continued to show an actual profit for the first quarter of 1984, and a projected profit for the entire year of $36,000.

With these figures in mind, the unconscionability issue then requires analysis of the effect of the stipulation itself upon the respective assets and liabilities of the parties. To be emphasized here is that all items of property which were distributed thereunder to defendant, most notably the real property housing the newspaper operation and the unpaid balance of the sales price of plaintiff's shares in Our Press, Inc., were transferred subject to all existing encumbrancing and offsetting business debts. In effect, then, the stipulation eliminated short- and long-term debts of the newspaper of more than $70,000. Coupling this with plaintiff's use of part of the cash proceeds from the Our Press, Inc. sale to discharge the $27,000 liability for newspaper payroll taxes, it becomes readily inferable that the financial condition of the newspaper had been significantly improved in the ensuing years and as a

result of the stipulation, from what it had been in 1981, and that the newspaper now represents a quite viable, potentially profitable business enterprise. Indeed, plaintiff's accountant attributed much, if not all, of the newspaper's previous financial difficulties to its then excessive debt structure. Defendant received no share or interest in the newspaper under the stipulation although, concededly, she had worked as intensely as plaintiff in preserving it over the more than 20 years of the parties' marriage.

In short, from what can be ascertained upon the record, which is admittedly incomplete because of the failure of plaintiff to properly raise the issue of unconscionability on his initial motion to vacate the stipulation, not only is the evidence insufficient to support the majority's conclusion that the settlement appears to have given defendant all the parties' assets and saddled plaintiff with all of their debts, but shows a far more even distribution. An agreement which, on this limited record, effectively awarded plaintiff a relatively debt-free, going business enterprise and gave defendant the remaining marital assets, much of which was mortgaged real property, can hardly be viewed as one which no rational person would make and no fair and honest person would accept. Thus, the record simply fails to demonstrate irrefutably that there was evidence of substantive unconscionability that requires a trial of that issue. Actions between husband and wife do not represent an exception to the judicially imposed limitations on the *sua sponte* appellate review undertaken by the majority here *(see, Collucci v Collucci,* 58 NY2d 834, 836-837).

The majority's ready willingness to find infirmities in this stipulation of final settlement of the marital dispute between two sophisticated parties, each represented by experienced, independent counsel, after years of litigation, based on an issue never actually raised and unsupported by any actual evidence in the record, will further impair the ability of litigants, attorneys and trial courts to confidently avoid the needless personal and financial hardship of fully contested matrimonial litigation *(see, Lischynsky v Lischynsky,* 95 AD2d 111, 114 [dissenting opn]).

The majority's disposition of this appeal is clearly inconsistent with *Christian's* direction that "[j]udicial review" of matrimonial agreements "is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences" *(Christian v Christian,*

42 NY2d 63, 71, *supra).* Since the unconscionability of the stipulation should never have been considered and the contentions of plaintiff actually advanced for reversal are clearly unpersuasive, the judgment entered on the stipulation should be affirmed.

MAHONEY, P. J., and KANE, J., concur with CASEY, J.; LEVINE and WEISS, JJ., dissent and vote to affirm in an opinion by LEVINE, J.

Judgement and order modified, on the law, without costs, by reversing so much thereof as ordered equitable distribution of the parties' marital property; matter remitted to Supreme Court for further proceedings not inconsistent herewith; and, as so modified, affirmed.