■ DELAINE BROWN, Respondent, v ARTHUR BROWN, Appellant.—Order and judgment (one paper) of the Supreme Court, New York County (Irving Kirschenbaum, J.), entered on or about June 7, 1988, which, *inter alia,* denied defendant Arthur Brown's motion to vacate his default, granted plaintiff

Delaine Brown's motion to confirm the report of the Special Referee, and set out details of the distribution of real and personal property between the parties, is unanimously modified, on the law and facts, to the extent of awarding defendant ownership of those items of personalty plaintiff admitted in the record were acquired from defendant's father's apartment; providing that the costs of storage for the parties' personal property be shared equally by both parties; and vacating the provision for payment of counsel fees by defendant, and otherwise affirmed, without costs or disbursements.

Appeal from the decision of the Supreme Court, New York County (Irving Kirschenbaum, J.), entered on or about March 1, 1988, is dismissed, as nonappealable, and subsumed in any event in the order and judgment herein, without costs and disbursements.

The plaintiff and defendant were married in May 1962. They have no children. Although defendant husband graduated from medical school in 1970 and completed a dual internship and residency in two specialties, he never obtained a license to practice medicine and did not pursue a medical career because of psychological and medical problems. Plaintiff wife, however, worked the entire time the parties were together.

In 1984, plaintiff was awarded a judgment of divorce, on the grounds of cruel and inhuman treatment commencing in 1975 and continuing throughout the marriage, and defendant was awarded judgment against the plaintiff on the grounds of abandonment in or about August 1979. Issues relating to ownership of personal and real property were severed for separate trial.

Thereafter, in her report, the Special Referee found that in three years since the order of reference, the defendant had, despite numerous warnings from her and his own attorneys, effectively abandoned the case. She proceeded to report based upon the evidence adduced by the plaintiff.

For the years 1962 through 1978 the defendant, a student or intern during most of that time, earned somewhat less than $70,000; the plaintiff earned about $265,164. In 1973 the defendant received $53,000 from his father's estate, which he turned over to plaintiff, who in turn placed it in a joint account with a stockbroker. In 1981 both parties received $10,000 from that account. The value of the account was in excess of $29,000 as of April 30, 1986. The Referee found the parties had three other joint assets when they separated in

1979. These were the contents of the marital apartment including a sizable collection of art, a home and 48 acres of land in Vermont, and a savings account at the Harlem Savings Bank.

It is not disputed that the Vermont property was purchased in the names of both parties, on October 5, 1978, for a sum of $113,000. The plaintiff testified and defendant does not dispute that the $33,000 cash down payment came out of the joint stock account and that the property was encumbered by an $80,000 mortgage. The plaintiff also testified and produced documentation to show that she paid all of the expenses on the Vermont property. Based on a schedule of expenses submitted by plaintiff supported by exhibits, the Referee found that the total expended by plaintiff on the property in Vermont from 1978 until the date of the hearing was $97,016.76, one half of which the Referee found was paid on behalf of the defendant and not reimbursed. In 1984 the property was assessed at a value of $211,700. Plaintiff's appraiser placed the value of $186,000 on the property as of September 1985. Using that appraised value reduced by the balance of $70,883 then due on the mortgage, the Referee found that the net value of the property was $115,117 and that each party owned one half the net value of the property or $57,558.50. Since the plaintiff had paid one half of $97,016.76, or $48,508, on behalf of the defendant, and was not reimbursed, the Referee found that to purchase the defendant's share of the property, she would have to pay $9,050.50 to defendant, and based on those same figures, to purchase plaintiff's share of the property defendant would have to pay $106,066.50.

With respect to the Harlem Savings Bank account, defendant withdrew $11,800 in December 1978 and transferred it to an account in Vermont. In his brief and papers filed on the motion to vacate the default, defendant maintains that the money was used for living expenses and supplies while he lived at and restored the Vermont property.

The personal property which was contained in the marital residence, a rental apartment located on Fort Washington Avenue, was inventoried at the various warehouses where it was placed by plaintiff. The bulk of this personal property is a collection of artworks. The Referee recommended that the parties be given the articles acknowledged by plaintiff as belonging to each and that all items designated as jointly owned be sold, with the proceeds divided equally after payment of storage. However, the ownership of much of the artwork is disputed. The record reflects that the bulk of the art

collection is listed as joint property. Plaintiff maintains that defendant brought none of the art items into the marriage. However, the defendant maintains that only a minimal amount of the artwork was purchased during the marriage and that most of it was acquired before the marriage.

Not mentioned in the Referee's report are the contents, which defendant maintains plaintiff took, of a rental beach bungalow in Atlantic Beach, Long Island. Plaintiff claims that all of the personalty except a damaged television set was returned to the bungalow in 1981.

Defendant did not dispute that the plaintiff paid the expenses on the Vermont property from the date of its purchase to the entry of the judgment. In addition, it is not disputed that she paid storage on the parties' personal property stored in warehouses, listed on schedules in the record. The expenses plaintiff incurred on the Vermont property were brought forward to April 15, 1988, for the purposes of the judgment, which tracked the Referee's report except for the adjusted amounts and an added award of $21,525 for plaintiff's attorneys' fees.

The Referee's report was confirmed by the IAS court "without opposition", noting that "the attorney for the defendant has notified the court that the defendant has failed to supply him with the information and documents necessary to respond to the motion". Thereafter, defendant moved to vacate the default asserting, with supporting documentation, that because of physical and emotional problems he had been unable to assist in his own defense. The court denied that motion to vacate and confirmed the Referee's report, in the judgment appealed from.

Defendant's sole excuse for his numerous and lengthy delays, his failure to present a case during the reference and his default on the motion is his poor mental and emotional health. Review of the record, however, supports the conclusion of the IAS court that defendant's problems did not prevent him from having a full and fair opportunity to present his side of the case. The reference lasted for almost three years, with defendant's requests for adjournments granted as a matter of course. While defendant submitted a letter from his physician, Dr. William Southwick, M.D., it does not state that defendant was completely incapacitated by his ailments. It is also significant that no physicians' letters, hospital records or other evidence were submitted previously to the court or Referee showing defendant's incapacity. Thus defendant, un-

der the circumstances, failed to give a reasonable excuse for his default.

Moreover, defendant's opposition to the Referee's findings, in the motion to vacate his default, is simply conclusory. Thus, defendant asserts that the bulk of the artwork came from his apartment and that of his father. The Referee, however, credited plaintiff's claim during the hearing that most of the art was jointly held. Defendant also does not refute the fact that plaintiff paid all the expenses on the Vermont property which was held in both names. Further, while the money initially used to establish the joint stock account came from defendant's father's estate, the deposit of those funds in a joint account evidenced a clear intention to share it equally with plaintiff (see, *Warren v Warren,* 82 AD2d 881, *revd on other grounds* 55 NY2d 874, *on remand* 95 AD2d 807).

Accordingly, defendant also failed to meet the second requirement for vacating a default, i.e., the existence of a meritorious defense (see, *Lins v Lins,* 98 AD2d 608).

Defendant's contention that the IAS court failed to adjudicate his counterclaim that a constructive trust be imposed upon the Vermont property is without merit. The failure of the court to consider the issue was due to defendant's failure to present any case. In any event, defendant alleged in his answer that the money used for the down payment on the property came from the joint stock account. He alleged also that this account consisted solely of his inheritance money; was made a joint account as a matter of convenience; and was purchased jointly as a matter of convenience. Therefore, he alleged plaintiff's interest must be returned on demand.

Even accepting defendant's allegations concerning his intentions with respect to the joint account and the Vermont property as true, all the elements necessary for imposition of a constructive trust are still not present. These requisite elements are (1) a confidential or fiduciary relationship; (2) a promise or agreement, express or implied; (3) a transfer in reliance upon the agreement; (4) breach of the promise; and (5) unjust enrichment (see, *Palazzo v Palazzo,* 121 AD2d 261, 263). While a fiduciary relationship, i.e., the marriage, and perhaps an alleged implied promise to return the property, are present, and a transfer of one half of the property to plaintiff, there is no evidence of a breach of the promise since no allegation is made that there was a demand for return of the property. However, most importantly, only $33,000 of the purchase price came from what defendant contends was solely his money. There is no dispute that plaintiff paid the mort-

gage and all other carrying charges for 10 years and put considerably more than $33,000 into the property. Thus, the award of a one-half interest in this property cannot be said to constitute unjust enrichment under these circumstances. Defendant is, therefore, not entitled to a constructive trust imposed on plaintiff's one-half interest.

Defendant contends that various articles of personalty were improperly determined by the court to be joint property. The record indeed contains plaintiff's admission that various items listed as joint were defendant's property. Since the parties stipulated and the court consented to adjudicate their rights under the pre-Equitable Distribution Law, those items conceded to be defendant's should be awarded to defendant.

Defendant asserts that storage costs were improperly awarded to plaintiff. Since plaintiff did place the property in storage for safekeeping, defendant should not have to bear the whole cost and, therefore, the parties should divide the costs of storage as originally recommended by the Referee.

While defendant alleges that the court improperly directed that one half of the joint stock account be awarded to plaintiff, the placement of defendant's money in a joint account creates a rebuttable presumption that the parties share equally *(see, Warren v Warren, supra)*. Defendant has failed to meet his burden of successfully rebutting this presumption, especially considering the evidence that plaintiff furnished the major financial support during the marriage.

Finally, we agree with defendant that the IAS court erred in awarding counsel fees to plaintiff. The court should base its determination as to counsel fees upon testimonial and other evidence of the services rendered and the financial condition of the parties, unless they have stipulated otherwise *(see, Olsan v Olsan,* 100 AD2d 776, 777, *appeal dismissed* 63 NY2d 649). Here the financial condition of the parties was ascertainable from the record and the hearings before the Referee. While the plaintiff's finances appear healthy enough to enable her to pay her own fees, the defendant's financial condition and earning power are poor. Concur—Kupferman, J. P., Asch, Kassal, Rosenberger and Smith, JJ.