■ WALTER W. GRUNFELD, Appellant-Respondent, v AUDREY F. GRUNFELD, Respondent-Appellant.—Casey, J. Cross appeals from a judgment of the Supreme Court (Ingraham, J.) ordering equitable distribution of the parties' marital property, entered October 5, 1988 in Cortland County, upon a decision of the court.

On the prior appeal in this case, we held that "[a]n open-court stipulation of settlement in a matrimonial action purporting to equitably distribute the parties' marital property, which is based in part upon erroneous findings of the trial court as to the value of certain marital property, and which results in an award of substantially all of the marital assets to one party while burdening the other party with virtually all of the marital debt, is patently unconscionable" (123 AD2d 64, 65). Since we found the record to be insufficiently developed on the issue of unconscionability, the matter was remitted for a hearing on plaintiff's cross motion to vacate the stipulation. In an oral decision at the close of the parties' proof upon remittal, Supreme Court found that Trial Term's original valuation of the marital assets was erroneous in two respects, which caused Trial Term's findings to be "some $40,000 off base". Concluding that no rational person would execute an agreement based upon figures that contained a $40,000 error, Supreme Court vacated the stipulation and a judgment was entered accordingly. We reverse.

Although the existence of errors in the original findings and the magnitude of those errors* are relevant, neither factor is dispositive of the issue remitted to Supreme Court. Rather, a proper inquiry must include a determination of whether Trial Term's errors induced the parties to enter into a stipulation that "is, in fact, so one-sided and unfair that no rational

---

* Using the figures arrived at by Supreme Court for the two assets, the magnitude of the total error was actually in excess of $70,000, not the $40,000 estimated by Supreme Court from the Bench.

person, exercising common sense, would make such an agreement and that no fair and honest person would accept it" *(supra,* at 70). Exercising our power to review the facts *(see,* CPLR 5501 [c]), we find that despite the errors in the factual findings upon which the stipulation was based, the stipulation was not one-sided or unfair.

First, however, we direct our attention to Trial Term's original erroneous findings. In our prior decision we identified three specific errors in the valuation of marital property which raised a question as to the validity of the stipulation. The first error concerned Trial Term's reliance upon the unadjusted price at which certain stock (hereinafter the OPI stock) was sold some two years after the matrimonial action was commenced *(Grunfeld v Grunfeld, supra,* at 69). At the original trial and again on remittal, the parties offered expert evidence which yielded widely divergent values for the OPI stock on the date the matrimonial action was commenced. We agree with Supreme Court's use of the $90,000 figure testified to by plaintiff's expert at the original trial. On remittal, plaintiff sought to establish the OPI stock as unmarketable and worth as little as zero, but we find this evidence incredible. Supreme Court reduced the $90,000 figure by $33,000, the entire amount of an uncollected debt owed to the corporation, despite the fact that the parties' OPI stock amounted to less than one third of the total shares in the corporation. In any event, the record established that the debt had not been written off as uncollectible and, therefore, remained an asset. Accordingly, we value the parties' OPI stock at $90,000.

The next error concerns Trial Term's failure to take into account a second mortgage on the marital residence *(supra).* Supreme Court correctly valued this marital asset at $20,459, a figure which reflects the additional encumbrance.

The third error previously identified by us arose out of Trial Term's valuation of the parties' newspaper business at zero, despite having found that business debts substantially exceeded business assets *(supra).* Supreme Court made no effort to determine the appropriate negative value. On appeal, the parties agree that a negative value is required, with defendant asserting a negative worth of $22,067, while plaintiff claims the figure is $25,699. Based upon our review of the record, we find defendant's figure to be the correct one.

The parties agree that Trial Term's original findings contain an additional error in the valuation of what the parties describe as newspaper business realty. The agreed-upon value

is $23,500, of which $6,500 was found to be separate property of plaintiff, leaving a marital asset of $17,000. There was, however, an outstanding mortgage balance of $16,680, leaving a net value of $320.

The relevant marital assets are valued as follows:

| | |
|---|---:|
| Marital Residence | $ 20,459 |
| Newspaper Business | |
|    Realty | 320 |
|    Business | (22,067) |
| Chenango Forks Partnership | 27,400 |
| OPI Stock | 90,000 |
| 1938 Chevrolet | 1,350 |
| Insurance | 8,000 |
| | $125,462 |

Trial Term's original findings valued the marital assets at $203,185, so the discrepancy is even larger than that found by Supreme Court on remittal. Our inquiry does not end here, however, for the question remains as to the impact these errors had on the parties' stipulation. Prior to the stipulation, the OPI stock was sold to a third party for cash and a $66,537 note, bearing interest at 9% per year and payable in monthly installments over nine years. The first $60,000 of these payments were to be used to satisfy an outstanding $60,000 debt owed to OPI by the parties' newspaper business. Pursuant to the stipulation, defendant received the note subject to the outstanding debt. Although the present value of what defendant will receive after the $60,000 debt is satisfied may be more than the $6,537 net equity which appears on the face of the note, we are of the view that the $6,537 figure is sufficiently accurate for the purposes of this proceeding. Included in the other marital assets distributed to defendant by the stipulation was the newspaper realty, valued at $320 as a marital asset. Since this realty also included a $6,500 value ruled to be plaintiff's separate property, defendant actually received $6,820 as a result of the transfer. Pursuant to the stipulation, defendant received the following assets:

| | |
|---|---:|
| Marital Residence | $20,459 |
| Newspaper Realty | 6,820 |
| Chenango Forks Partnership | 27,400 |
| Note | 6,537 |
| 1938 Chevrolet | 1,350 |
| Insurance | 8,000 |
| | $70,566 |

Plaintiff claims that he made payments which reduced the

amount of the mortgage balances on the marital residence and the newspaper realty during the period between the commencement of the matrimonial action, which was the date used for valuation of the marital assets, and the date of the stipulation. According to plaintiff, this enhancement to the value of the assets transferred to defendant should be taken into account. We note, however, that during the period that he was making these payments, plaintiff had the beneficial use and enjoyment of the marital residence and business realty.

A comparison of the assets received by defendant ($70,566) to the total marital assets ($125,462) reveals that defendant received 56% of the marital assets. Accordingly, we conclude that the record now establishes that although the stipulation was based upon substantial errors in Trial Term's original findings, the stipulation itself is not so one-sided and unfair that no rational person would make such an agreement and that no fair and honest person would accept it. Thus, there is no basis for setting aside the stipulation, and defendant's motion to enforce it should be granted.

As a final matter, we note that the parties have referred to an additional asset, described as the California partnership. Although the record, both at the original trial and upon remittal, is unclear, it appears that the parties each had a 25% interest in this partnership and that the funds for the parties' interest came from an inter vivos gift by defendant's father. Whether the gift was to both parties or to defendant alone is unclear (see, Domestic Relations Law § 236 [B] [1] [d] [1], [3]). It is also unclear whether the parties treated the asset as joint property (see, Brown v Brown, 148 AD2d 377). In any event, the partnership was apparently dissolved prior to the commencement of the divorce action, and 50% of the partnership proceeds was deposited in an account in California in defendant's name. We have not considered this asset in determining the validity of the stipulation since neither the stipulation nor Trial Term's findings upon which the stipulation was based made any determination as to the nature of the asset or its disposition. Supreme Court also refused to consider it on remittal. Were we to include the California partnership as a marital asset distributed to defendant by the stipulation, it would not alter our conclusion that the stipulation should not be vacated. Although defendant's share of the marital assets would then increase to about 66%, it cannot be said that an agreement which results in such a distribution yields "an award of substantially all of the marital assets to one

party while burdening the other party with virtually all of the marital debt" *(Grunfeld v Grunfeld, supra,* at 65). We have considered the parties' remaining arguments and find them to be without merit.

Judgment reversed, on the law and the facts, with costs to defendant, defendant's motion to enforce the stipulation of settlement granted and plaintiff's cross motion to set aside said stipulation denied. Mahoney, P. J., Kane, Casey, Mercure and Harvey, JJ., concur.