[597 NYS2d 743]

Hedy L. McSparron, Appellant-Respondent, v James G. McSparron, Respondent-Appellant.

Third Department, May 6, 1993

### APPEARANCES OF COUNSEL

*Brandes, Weidman & Spatz, P. C.,* New York City *(Joel R. Brandes, Carole L. Weidman* and *Kenneth S. Sternberg* of counsel), for appellant-respondent.

*Friedman & Manning,* Delmar *(Michael P. Friedman* of counsel), for respondent-appellant.

*Kenneth J. Munnelly, Law Guardian,* Delmar, for Mollie McSparron and another.

### OPINION OF THE COURT

HARVEY, J.

The parties to this action were married on May 24, 1969, and have two minor children; Mollie (born August 4, 1976) and Jakob (born December 15, 1978). Although neither party worked when they were first married, both had undergraduate degrees. During the course of the marriage, however, defendant acquired a law degree and license and plaintiff ulti-

mately obtained a medical degree and license. At the time of the parties' separation in June or July 1989, defendant was employed by the State as a Deputy First Assistant Attorney-General with the Division of State Counsel and plaintiff was employed by Albany Medical Center as a medical intern. At that time, defendant's income was approximately $97,000 per year while plaintiff's income was approximately $24,000 per year. Plaintiff commenced this action in September 1989 seeking a divorce, equitable distribution and custody of the parties' children. A jury trial was held regarding the divorce and a nonjury trial was held on the issues of equitable distribution and custody.

Thereafter, Supreme Court granted the divorce, awarded custody of Mollie to defendant and Jakob to plaintiff, awarded plaintiff maintenance of $750 biweekly through September 1, 1996 and awarded plaintiff child support of $131 per week. The court also distributed the parties' extensive marital assets which included real estate, bank accounts, bonds, motor vehicles, pension funds and other valuables. In addition, plaintiff's medical license was valued at $903,406 and awarded to her and defendant's law license was valued at $529,363 and awarded to him. A judgment was entered reflecting Supreme Court's decision and the parties now each cross-appeal from certain parts of the judgment.

Both parties challenge the propriety of various aspects of Supreme Court's distribution of the marital assets. Property which is acquired during the marriage is presumed to be marital property (see, Domestic Relations Law § 236 [B] [1] [c]). Notably, a party seeking to overcome this presumption has the burden of proving that the property at issue is separate property (see, Sclafani v Sclafani, 178 AD2d 830, 831).

Initially, we address plaintiff's various arguments alleging that defendant received a disproportionate and undeserved share of the marital assets. Her first claim is that because her mother contributed most of the money toward the majority of the marital assets allegedly for plaintiff's benefit alone, those contributions should have been given greater weight in Supreme Court's division of the marital property (see, Domestic Relations Law § 236 [B] [5] [d] [13]). Nevertheless, although there was ample testimony that plaintiff's mother did contribute large sums of money to purchase various marital assets, almost all of this money was either commingled in the parties' joint account or used to purchase jointly held property. This use of the moneys evidences plaintiff's mother's "clear inten-

tion to share it equally with [defendant]" *(Brown v Brown,* 148 AD2d 377, 381), which warrants treating the money and assets bought with it as marital property *(see, Price v Price,* 69 NY2d 8, 15; *Glazer v Glazer,* 190 AD2d 951, 953; *Di Nardo v Di Nardo,* 144 AD2d 906, 907). Regarding plaintiff's assertion that Supreme Court erred in considering $40,000 in bearer bonds as a marital asset because they were allegedly her mother's property, we note that the only evidence at trial on this issue was plaintiff's testimony. Although plaintiff did state that the bonds belonged to her mother, she admitted that she kept the bonds in a safety deposit box her mother did not have access to. She also testified that she clipped the bonds when she was living with defendant and sometimes placed the money in their joint account. Given this inconsistent testimony, we conclude that plaintiff failed to meet her burden of clearly establishing that the bonds were not marital property *(see, Vogel v Vogel,* 156 AD2d 671, 673; *Lord v Lord,* 124 AD2d 930, 931).

We turn now to the issue of Supreme Court's distribution of the proceeds of the sale of certain jointly owned marital property located at 567 Morris Street in the City of Albany. This property was sold in June 1989 for $128,000,[1] and the whereabouts of the proceeds of the sale is the source of some dispute and confusion. However, the figures given by the parties result in that approximate amount when examined closely. After closing expenses and other debts were paid, a net amount remained which the parties and Supreme Court agreed would be split equally. Although the parties dispute the actual net amount of the sale, we have little difficulty in agreeing with Supreme Court that the net amount was $89,114, with each party entitled to approximately $44,557.[2]

---

1. The sale price was listed on a real property tax form as $105,000 but was actually $128,000.

2. Although in her brief plaintiff contends that the actual amount of the net proceeds of the Morris Street sale was $72,779, her figures are not consistent with the information in the record. Specifically, it appears that she does not take into account the amount of $21,724.38 that plaintiff apparently received in cashier's checks at the time of the closing on the Morris Street property and placed in a joint certificate of deposit at Albany Savings Bank opened June 17, 1989. On August 28, 1989, plaintiff opened another Albany Savings Bank certificate of deposit in her own name and withdrew the amount from the June 17, 1989 certificate of deposit (plus interest) and placed the funds in the new certificate of deposit. This latter amount plus interest was later placed in an Albany Savings Bank passbook savings account.

The record indicates that, after the closing, plaintiff placed $21,724 in a joint certificate of deposit at Albany Savings Bank on June 17, 1989 and she placed another $60,000 in a joint certificate of deposit at Home & City Savings Bank opened July 20, 1989. On August 8, 1989, pursuant to an agreement with defendant's attorney, plaintiff withdrew $60,000 from the Home & City Savings Bank certificate of deposit and sent defendant a check for $36,399. Notably, because Supreme Court determined that both parties were entitled to $44,557, it determined that defendant was entitled to a credit of $8,167.50. Of the amount remaining from the $60,000 certificate of deposit, plaintiff placed $11,849 in a joint account at Home & City Savings Bank and $10,899.71 in her account at Home & City Savings Bank.

Plaintiff does not challenge Supreme Court's finding that the net proceeds from the sale of the Morris Street property were marital property. Instead, she argues that the court awarded the same asset to her twice by stating that she would receive half the proceeds and she would separately be awarded bank accounts that actually contained the traceable proceeds of her portion of the sale. As a result plaintiff alleges that her part of the money was "double counted", meaning that, in the final accounting, defendant must have received a "disproportionate undeserved share of other assets". We have examined this issue as closely as possible, given the difficulty of following the proceeds of the sale from the information on the record and the lack of specificity in Supreme Court's conclusions on this issue. We conclude that there may be some merit to plaintiff's contentions. In the list of assets awarded to the parties, Supreme Court does not list the $36,397.50 plaintiff gave to defendant from the $60,000, nor does it appear to list the remainder of moneys from the $60,000 certificate of deposit that totaled over $22,748 and were placed in Home & City Savings Bank accounts by plaintiff. Nevertheless, the court separately awarded these unspecified Albany Savings Bank accounts containing approximately $30,000 to plaintiff even though it appears from the record that at least some of this money is traceable to the original June 17, 1989 certificate of deposit and it is possible that the remaining amount is also traceable to the sale. Because it is impossible to tell from Supreme Court's decision what connection the $30,000 account has to the Morris Street property, this issue should be explored and explained in better detail on remittal. If all or part of that money can reasonably be traced to the sale, then it

should not be listed as a separate asset in the same way that the remainder of the net proceeds was not.

■ Next, we consider the distribution of the parties' professional licenses. Turning first to the issue of plaintiff's medical license which she obtained immediately prior to the commencement of this action, we note that Supreme Court found it to be marital property valued at $903,406 and awarded it to plaintiff. Despite plaintiff's contentions otherwise, defendant did not waive any interest in plaintiff's medical license because the statement of proposed disposition where such a course was considered was not binding and therefore did not constitute a waiver *(see,* 22 NYCRR 202.16 [d]). Plaintiff's medical license is marital property because it is an item "of economic value that [was] acquired during the marriage" *(DiCaprio v DiCaprio,* 162 AD2d 944, 945, *lv denied* 77 NY2d 802; *see, O'Brien v O'Brien,* 66 NY2d 576; *Finocchio v Finocchio,* 162 AD2d 1044, 1045). Supreme Court properly found that defendant was entitled to a share of the license because he contributed to the functioning of the household while plaintiff attended medical school. In our opinion, however, we agree with plaintiff's expert that the value of plaintiff's license is $669,618. It is an undisputed fact that plaintiff has always planned on joining the staff of a local health maintenance organization. By doing so, her income would not reach that envisaged by defendant's expert. She has no record that would indicate the enhanced income attributed to her by defendant's expert.

■ We now turn to the issue of the disposition of defendant's license.[3] As previously indicated, there is no question that a professional license is a marital asset subject to equitable distribution, to be valued in accordance with "the enhanced earning capacity it affords the holder" *(O'Brien v O'Brien, supra,* at 588). However, in cases where a professional practice or career has been ongoing for a number of years the "license should be deemed to have merged with and been

---

**3.** [4] We note that plaintiff unsuccessfully brought a motion to strike those portions of defendant's brief dealing with this issue on the basis that defendant allegedly did not specifically list this issue in his limited notice of appeal. We find that this argument is implied from his appeal challenging, in general, the *amount* of marital assets awarded to plaintiff as opposed to the reason therefor. We find persuasive defendant's contention that he did not feel he had to formally list his law license valuation in the notice of appeal because it was actually awarded to him by Supreme Court and he was technically not aggrieved.

subsumed by the practice itself" and a separate award should not be made so as to avoid a "double recovery" *(Marcus v Marcus,* 137 AD2d 131, 139; *see, Wells v Wells,* 177 AD2d 779, 780; *Finocchio v Finocchio, supra,* at 1045). Here, it is undisputed that defendant was a career public servant who began working for the State upon his passing the New York Bar in 1973 and was employed as a Deputy First Assistant Attorney-General at the time of trial. As a result, defendant's law license has long since merged into his professional career and therefore should not have been considered either marital property "nor an asset which possesses an independent identity for the purposes of computing appreciation" *(Kalisch v Kalisch,* 184 AD2d 751, 752). Consequently, Supreme Court erred in valuing defendant's law license as a marital asset and, upon remittal, should recalculate accordingly.

■ Turning to other issues, we reject defendant's arguments relating to the amount of maintenance he is obligated to pay. Using the criteria of Domestic Relations Law § 236 (B) (6) (a), Supreme Court awarded plaintiff maintenance of $750 biweekly through September 1, 1996 and made the award retroactive to September 1, 1989, with defendant to receive a credit for maintenance already paid. According to defendant, maintenance was not warranted because plaintiff allegedly has enough assets to meet her needs.[4] Nevertheless, Supreme Court is given broad discretion to determine maintenance so long as the "findings of fact and conclusions of law underlying the judgment reflect the court's analysis" *(Anglin v Anglin,* 148 AD2d 833, 834; *see, Wollner v Wollner,* 177 AD2d 805, 806). Here, Supreme Court's decision sufficiently details plaintiff's economic and noneconomic contributions to this long-term marriage and notes the disparity in incomes between the parties at the time of the commencement of this action. Because a review of Supreme Court's findings of fact and conclusions of law indicates nothing improper in its analysis or consideration of the statutory factors, disturbance of the maintenance award is not required.

■ Next, we examine Supreme Court's computation of the amount of child support. The court, applying the Child Support Standards Act (Domestic Relations Law § 240 [1-b]), or-

---

4. Defendant also makes several arguments challenging the retroactivity of the maintenance and child support awards. However, because defendant's notice of appeal, as limited by him, did not list this issue, we consider it to have been waived *(see, Dompkowski v Dompkowski,* 159 AD2d 1021, 1022; *Day v Day,* 112 AD2d 972, 973).

dered that defendant pay plaintiff child support for Jakob of $131 per week. Plaintiff challenges the court's determination solely on the basis of its decision to confine its calculations under the Act to the first $80,000 of the parties' combined parental income. We find no abuse of discretion in the court's determination. With respect to the amount of child support from the combined parental income over $80,000, a court must consider the "factors set forth in [Domestic Relations Law § 240 (1-b) (f)] and/or the child support percentage" (Domestic Relations Law § 240 [1-b] [c] [3]). Here, Supreme Court chose to apply the factors of Domestic Relations Law § 240 (1-b) (f) and specifically explained why those factors did not necessitate child support in this case from parental income over $80,000 (see, Chasin v Chasin, 182 AD2d 862, 863). Nevertheless, on remittal, the child support calculation of Supreme Court should be reexamined because it is not clear from the decision whether the court in fact deducted the maintenance payments defendant is obligated to pay from defendant's income as required by the Child Support Standards Act (Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]).

■ We turn now to defendant's contention that the limitations placed by Supreme Court on his visitation with Jakob were improper, unfair and should be reversed. We agree. In its decision, Supreme Court granted defendant visitation with Jakob in accordance with "a schedule to be *determined by the parties* in consultation with Dr. Robert Williams, Jakob's counselor and subject to court approval" (emphasis supplied). As noted by defendant, this order was tantamount to a complete denial of any possibility of visitation with Jakob given that it is for the most part contingent upon a mutual agreement with plaintiff that he asserts will never occur. Indeed, this Court has seldom reviewed a more bitter, divisive, highly publicized divorce than that of these parties. In light of this situation it is obvious that no visitation schedule could be mutually agreed upon by these parties. The futility of such a hope is underscored by the fact that, as of the time of oral argument in this case, defendant has apparently not had any visitation with his son. Although it is true that Jakob and defendant had a strained relationship in the past, this is not a sound reason for visitation to be virtually forbidden. There is no issue of abuse here and there was no persuasive reason presented to this Court to ignore the well-settled principle that, absent extraordinary circumstances, visitation is presumed to be always in the best interest of the child *(see,*

*Matter of Vann v Vann,* 187 AD2d 821). Accordingly, we remit this issue to Supreme Court for the purpose of constructing a reasoned and concrete visitation schedule between defendant and his son.

The remaining issues raised by the parties and not specifically addressed herein have been examined and been found to be without merit or otherwise lacking in persuasiveness. In view of our substantial modification of the values of the parties' respective professional licenses, following Supreme Court's determination of the actual disposition of the proceeds of the sale of the Morris Street property, Supreme Court should reconsider its distribution of the marital assets.

WEISS, P. J., LEVINE, MERCURE and MAHONEY, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as ordered distribution of the marital assets and provided for defendant's visitation with his son, Jakob; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.