■ HEDY L. McSPARRON, Appellant, v JAMES G. McSPARRON, Respondent. JAKOB McSPARRON, Appellant. [619 NYS2d 163] —Mercure, J. P., Appeals (1) from an order of the Supreme Court (Harris, J.), entered October 13, 1993 in Albany County, which directed limited visitation between defendant and his son, and (2) from an order of said court, entered October 22, 1993 in Albany County, which, *inter alia,* granted defendant's motion to modify a judgment of divorce.

Plaintiff and defendant, a physician and a lawyer, respec-

tively, and participants in a singularly bitter, divisive and highly publicized divorce action, previously cross-appealed from various aspects of Supreme Court's judgment of divorce, including the identification, valuation and distribution of the parties' marital property and the requirement that defendant pay child support of $131 per week for the parties' son, Jakob, and biweekly maintenance of $750 through September 1, 1996 (190 AD2d 74). In response to plaintiff's strenuous challenge to Supreme Court's valuation of the parties' professional licenses, we concluded that the valuation of plaintiff's newly acquired medical license was excessive and reduced it from $903,406 to $669,618 *(supra,* at 80). As for defendant's law license, which Supreme Court had valued at $529,363, we were of the view that it had merged with defendant's career as a Deputy First Assistant Attorney-General and "therefore should not have been considered either marital property 'nor an asset which possesses an independent identity for the purposes of computing appreciation' " *(supra,* at 81, quoting *Kalisch v Kalisch,* 184 AD2d 751, 752). In light of our substantial modification of the values of the parties' respective professional licenses, we remitted the matter to Supreme Court for, *inter alia,* a reconsideration of its distribution of the marital assets *(supra,* at 83).

While the prior appeal was pending before this Court, plaintiff appeared at a Manhattan press conference with State Republican Party Chairman William Powers and accused defendant of drug abuse and defendant's immediate superior, then Attorney-General Robert Abrams, of a possible coverup. The allegations were made for the admitted "political" purpose of thwarting Abrams' effort to win a contested primary election for the Democratic Party candidacy for the office of United States Senator and opportunity to run against the incumbent Republican Alfonse D'Amato in the general election. Plaintiff further heightened the political pressure on Abrams by publicly accusing defendant of signing a real property transfer gains tax affidavit three years earlier that understated the amount the parties received for the sale of commercial property they owned in the City of Albany. The inevitable result of this conduct and the political embarrassment it caused Abrams came in December 1992 when defendant was told to immediately resign his $98,000 per year position or be fired. He resigned.

Citing the loss of his employment as a substantial change in circumstances, defendant then sought elimination of the award of maintenance and a downward modification of his

$131 per week child support obligation. By order entered October 22, 1993, Supreme Court granted defendant's application to the extent of eliminating prospective maintenance. It also redistributed the parties' marital property, as directed in our prior order, by awarding plaintiff her own medical license, her pension with the New York State Retirement System, 5% of the net proceeds of sale of the marital residence and additional personal property valued at approximately $205,105. Defendant was awarded 95% of the net proceeds of sale of the marital residence, the marital portion of his pension, valued at $108,000, and additional real and personal property with a net value of approximately $277,400. Plaintiff once again appeals.

We affirm. Initially, it is our view that Supreme Court did not abuse its discretion in modifying the judgment of divorce so as to eliminate defendant's prospective maintenance obligation. The record provides abundant support for Supreme Court's conclusion that defendant did not voluntarily relinquish his employment but, rather, that the loss of his position "was engendered by plaintiff's own acrimonious and vindictive conduct" toward him. Needless to say, the complete loss of a $98,000 per year position is a substantial and unforeseen circumstance justifying a downward modification, particularly in view of the increase in plaintiff's income from $26,000 to $80,000 during the intervening period (see, Neumark v Neumark, 189 AD2d 863, lv dismissed 82 NY2d 843; Schnoor v Schnoor, 189 AD2d 809). As for the argument that defendant should be held accountable for the allegedly felonious conduct leading to the loss of his employment, we merely note that we have been made aware of no criminal or disciplinary proceedings that have been resolved against defendant and that plaintiff was herself a signatory to the allegedly fraudulent document and was obviously aware of the discrepancy between the sale price of the property and the consideration stated on the form.

We further conclude that Supreme Court's distribution of the parties' marital property following our remittal was by no means inequitable. Even accepting plaintiff's position that the marital residence, which has not yet been sold, has a net value of $260,000, Supreme Court's overall distribution favored plaintiff, who received approximately $888,000 in assets to defendant's $632,000. Plaintiff's argument that there should have been an even more greatly disproportionate distribution in her favor because her mother was the source of a substantial part of the parties' property was raised and rejected by

this Court on the prior appeal (190 AD2d 74, 77-78, *supra).* Similarly, the argument that the value of plaintiff's medical license should have been excluded from consideration or that the purported value of defendant's law license should have been considered is really nothing more than an effort to reargue our prior determination that defendant's license merged into his (then) career in public service *(supra,* at 81). Plaintiff has offered no persuasive reason why we should abandon that position, which is supported by well-reasoned legal authority *(see, Maher v Maher,* 196 AD2d 530; *Kalisch v Kalisch,* 184 AD2d 751, *supra; Parlow v Parlow,* 145 Misc 2d 850; *see also,* Jacobson, *Valuing Licenses In Divorce Actions,* NYLJ, Oct. 25, 1994, at 1, col 1; Greenhaus, *Equitable Distribution of a Never Used Professional License,* 66 NY St BJ 20 [1994]). Plaintiff's remaining contentions have been considered and rejected.

As a final matter, although plaintiff and Jakob each filed a notice of appeal with respect to Supreme Court's visitation order entered October 13, 1993, Jakob has not filed a brief and plaintiff's brief does not address the issue. Accordingly, the appeal from that order is deemed abandoned and shall be dismissed.

Crew III, Casey and Peters, JJ., concur. Ordered that the appeal from order entered October 13, 1993 is dismissed, as abandoned. Ordered that the appeal from order entered October 22, 1993 is affirmed, with costs.