■ SHARON M. BISHOPP, Respondent, v ANDREW J. BISHOPP, Appellant. [962 NYS2d 503]—

---

Egan Jr., J. Appeal from an order of the Supreme Court (McDermott, J.), entered December 12, 2011 in Madison County, which, among other things, partially granted plaintiff's motion to, among other things, enforce the terms of the parties' stipulation of settlement.

Pursuant to the terms of their September 2004 stipulation of settlement, which was incorporated but not merged into their subsequent judgment of divorce, the parties agreed that defendant (hereinafter the husband) would pay plaintiff (hereinafter the wife) spousal maintenance in the amount of $860 per month for five years and, further, that the wife would convey to the husband all right, title and interest in the family trash hauling business in exchange for a distributive award in the amount of $252,000 (payable in monthly installments of $3,000). When the husband fell into arrears, the wife moved by order to show cause to enforce the terms of the parties' agreement, and the husband cross-moved to, among other things, set aside the stipulation of settlement. Supreme Court, among other things, partially granted the wife's application by directing that a judgment be entered in her favor in the net sum of $40,163.32. This appeal by the husband ensued.

We affirm. "Given the fiduciary relationship that exists between spouses, separation agreements are more carefully scrutinized than ordinary contracts and may be set aside if the agreement's terms evidence overreaching, fraud, duress or a bargain so inequitable that no reasonable and competent person would have consented to it" (*Curtis v Curtis*, 20 AD3d 653, 654 [2005] [citations omitted]; *see Mesiti v Mongiello*, 84 AD3d 1547, 1548 [2011]).[1] That said, "spouses are encouraged to resolve their own issues" (*Marin-Brown v Brown*, 79 AD3d 1302, 1303 [2010]) and, for that reason, "[j]udicial review of such agreements should be exercised sparingly and courts should not 'redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided' " (*Empie v Empie*, 46 AD3d 1008, 1009 [2007], quoting *Christian v Christian*, 42 NY2d 63, 72 [1977]; *see Curtis v Curtis*, 20 AD3d at 654-655). Moreover, a "party who has made a voluntary and informed decision" to enter into a separation agreement or stipulation of settlement—even one that is one-sided—does not

---

1. In the context of a matrimonial action, there is no meaningful distinction between a separation agreement and a stipulation of settlement (*see Grunfeld v Grunfeld*, 123 AD2d 64, 68 [1986]).

enjoy "an absolute entitlement to a judicial hearing" simply because he or she now regrets the bargain that was struck (*Curtis v Curtis*, 20 AD3d at 656).

Initially, the documentary evidence submitted in support of the husband's cross motion establishes only that he had second thoughts about the deal he made, which is insufficient to trigger a hearing regarding the claimed unconscionability of the settlement agreement. On that point, and contrary to the husband's assertion, the underlying stipulation of settlement "is not per se unconscionable simply because marital assets are divided unequally, because [the husband] gave away more than [he] might have been legally required to do, or because [his] decision to approve the agreement might be characterized as unwise" (*Lounsbury v Lounsbury*, 300 AD2d 812, 814 [2002] [internal quotation marks and citations omitted]; *accord Marin-Brown v Brown*, 79 AD3d at 1304). Nor are we persuaded that the parties' stipulation should be invalidated because the husband elected to proceed without counsel (*see Mesiti v Mongiello*, 84 AD3d at 1550; *Garner v Garner*, 46 AD3d 1239, 1240 [2007]; *Lounsbury v Lounsbury*, 300 AD2d at 815) and chose to accept the wife's valuation of the disposal business, as "the plain language of the [stipulation] belies any argument that [he] lacked an opportunity to review the agreement or to seek legal and financial advice" (*Curtis v Curtis*, 20 AD3d at 655).[2] To the extent that the husband now asserts that the wife, as his bookkeeper, employed an improper valuation methodology and, in so doing, overvalued the business, there is nothing in the record to suggest that the wife "cook[ed] the books" in order to skew the valuation or otherwise distorted—or denied the husband access to—the relevant financial documents (*see generally Christian v Christian*, 42 NY2d at 72 [cautioning against judicial intervention "when there has been full disclosure between the parties, not only of all relevant facts but also of their contextual significance"]). Accordingly, and upon our review of the record as a whole, we cannot say that the distribution of assets between the parties is so lopsided as to "shock the conscience" (*Marin-Brown v Brown*, 79 AD3d at 1304; *accord Cheruvu v Cheruvu*, 59 AD3d 876, 878 [2009]; *Garner v Garner*, 46 AD3d at 1240). The husband's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

---

**2.** Indeed, the stipulation of settlement recites, in relevant part, that "the parties are both fully familiar with the financial aspects of the . . . [d]isposal business" and that the husband "has been fully informed of his right to the aid and assistance of counsel, but he has elected to proceed in this matter without counsel."

Rose, J.P., Stein and Spain, JJ., concur. Ordered that the order is affirmed, without costs.

