*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 22, 2015                 517860
_____

CAREN EE.,
                        Respondent,

            v                          MEMORANDUM  AND  ORDER

ALAN EE.,
                        Appellant.
_____


Calendar Date:  November 20, 2014

Before:  McCarthy, J.P., Garry, Lynch and Clark, JJ.

                    _____


        Cynthia Feathers, Glens Falls, for appellant.

        Pope & Schrader, LLP, Binghamton (Alan J. Pope of counsel),
for respondent.

        Sheila E. Shea, Mental Hygiene Legal Service, Albany (April
J. Smith of counsel), on behalf of the parties' child.

        Battisti & Garzo, PC, Binghamton (F. Paul Battisti of
counsel) and Robert G. Behnke, County Attorney, Binghamton
(Philomena M. Stamato of counsel), for the coguardians of the
parties' child.

                    _____


Garry, J.

        Appeal from an order of the Supreme Court (Guy, J.),
entered November 21, 2013 in Broome County, which denied
defendant's motion for, among other things, a permanent
injunction.

        Plaintiff (hereinafter the wife) and defendant (hereinafter
the husband) are the parents of an adult son who is diagnosed

with autism and has received media attention for his achievements as a visual artist. When the parties divorced in 2002, they entered into an opting-out agreement and an oral stipulation, and consented to the entry of a judgment of divorce that incorporated several agreed-upon provisions pertaining to mutual management of the son's affairs. In particular, the parties agreed in paragraph 36 that "[a]ny books or movies dealing with [the son] or his artwork" were to be contracted by the parties' mutual agreement.

In 2012, the wife published a book about a certain medical disorder that, in her opinion, is present in the son and is often present but undiagnosed in other autistic children. The book is based in part on the wife's research, and in part on her personal experiences as the son's mother. It includes multiple references to the son, who is identified by a pseudonym. The wife did not obtain the husband's consent before contracting for the book's publication. Upon learning of the book following publication, the husband moved by order to show cause to enforce paragraph 36, contending that his consent should have been obtained prior to publication as the book "deal[s] with" the son. The husband sought relief pursuant to the parties' agreement, including counsel fees, and further sought temporary and permanent injunctive relief to prevent the wife from "making bookstore, media or any other promotional appearance[s] and/or engaging in any profit driven enterprise related to [the son's] health condition." Supreme Court denied the husband's application for a preliminary injunction, and subsequently denied the application in its entirety. The husband appeals.

As a preliminary matter, the husband appropriately moved by order to show cause to enforce the parties' agreement; contrary to the wife's contention, he was not required to commence a separate action (see e.g. Bishopp v Bishopp, 104 AD3d 1121, 1122 [2013]; Dalton v Posada, 81 AD3d 1142, 1142 [2011]; see also Rawlings v Rawlings, 50 AD3d 998, 999 [2008]). As for the merits, where, as here, a divorce judgment is silent as to whether the parties' agreement was to survive or merge therein, survival is presumed unless the parties' language is ambiguous as to their intent. Here, the language of the parties' agreement pertaining to mutual management of the son's affairs clearly

reveals that the parties intended it to survive the judgment (see Ventura v Leong, 68 AD3d 1318, 1319-1320 [2009]; Von Schaaf v Von Schaaf, 257 AD2d 296, 298 [1999]). Thus, the disputed provision must be interpreted according to the principles of contract law to give effect to the parties' intentions (see Desautels v Desautels, 80 AD3d 926, 928 [2011]; Matter of Heinlein v Kuzemka, 49 AD3d 996, 997 [2008]).

The husband contends that the wife violated the parties' agreement by publishing a book that "deal[s] with" the son without obtaining his consent. The wife contends that the son's role is minor, the book is primarily about the general issue of the undiagnosed disorder in people with autism, and the book does not violate the parties' agreement because it is not solely and predominantly about the son. Upon review, we agree with the wife that the scope of the book is not solely limited to the son, but is also concerned, to a large degree, with data, research and interviews that led the wife to conclude that many autistic children, including the son, suffer from the disorder in question. Nevertheless, we disagree with the wife's contention that this alone provides a sufficient basis for determining that the book does not violate the parties' agreement.

In determining the meaning of unambiguous language, a court must give contractual terms their plain and ordinary meaning (see Bauersfeld v Board of Educ. of Morrisville-Eaton Cent. School Dist., 46 AD3d 1003, 1005 [2007], lv denied 10 NY3d 704 [2008]). The parties' agreement does not specifically define the phrase "deal[] with." Dictionaries define this phrase to mean "to have to do: concern oneself" (Webster's Third New International Dictionary of the English Language 581 [1976]), to "take or have as a subject; discuss" (The New Oxford American Dictionary 435 [2d ed 2005]), "[t]o be occupied or concerned" (The American Heritage Dictionary of the English Language 466 [5th ed 2011]), and "to concern oneself or itself" (Merriam-Webster Online Dictionary, http://www.merriam-webster. com/dictionary/deal [accessed Dec. 1, 2014]). Notably, none of these definitions includes qualifying words such as "primarily" or "solely" that would narrow the meaning of the phrase as the wife contends, nor does any such limiting language appear in the disputed provision. The parties could have included such language if they had wished

to narrow the scope of their agreement to books that dealt mainly or exclusively with the son, but they did not do so, and a court may not create a new contract in the guise of interpretation by adding terms to the language chosen by the parties (see Smith v Smith, 59 AD3d 905, 906 [2009]).  Accordingly, the book "deal[s] with" the son if it can be said to have to do with the son, take him as a subject, discuss him or concern itself with him.

The book makes dozens of references to the son, albeit under a pseudonym, and includes biographical information, specific accounts of his medical diagnoses and treatments, and many detailed anecdotes describing his experiences and behaviors. The first of the book's nine chapters is exclusively about the son, describing his birth, the progression of his symptoms, his diagnosis, and the process by which the wife eventually formed the opinion that he also suffers from the undiagnosed disorder. Although the book's remaining eight chapters address more general subjects such as medical information and the experiences of other families, they also include additional references to the son, with details about his behavior, diagnoses and treatment, as well as direct quotations from him.  Only three of the book's nine chapters make no reference to the son.  He is also discussed in the book's acknowledgments, introduction and conclusion.  Thus, we find that the book concerns the son and takes him as a subject, and that it "deal[s] with" the son within the meaning of the parties' agreement.  Therefore, the wife breached the agreement as a matter of law by contracting for the book's publication without obtaining the husband's consent.

The disputed provision directs that the net proceeds from any book "dealing with" the son are to be deposited in a joint account established by the parties for the son's benefit, and that the disposition of the funds is to be determined by mutual agreement or, if necessary, "by a court after the appointment of a Guardian ad Litem."  A separate paragraph further provides that where a breach of the divorce judgment has been established to the satisfaction of a court, the party who was obliged to take legal action to cure the breach is entitled to reasonable counsel fees and expenses.  The husband has demonstrated that he is entitled to relief under both provisions.  Thus, the matter must be remitted to Supreme Court to determine the disposition of any

net proceeds from the book and the amount of counsel fees and expenses to be awarded to the husband.

We reach a different conclusion as to the husband's request for an injunction. A permanent injunction "is an extraordinary remedy to be granted or withheld by a court of equity in the exercise of its discretion. Not every apprehension of injury will move a court of equity to the exercise of its discretionary powers" (Kane v Walsh, 295 NY 198, 205 [1946] [internal citation omitted]). To be entitled to permanent injunctive relief, a party must demonstrate irreparable harm and the absence of an adequate remedy at law (see Guido v Town of Ulster Town Bd., 74 AD3d 1536, 1538 [2010]; McDermott v City of Albany, 309 AD2d 1004, 1005 [2003], lv denied 1 NY3d 509 [2004]). A party must further establish that the balance of equities favors the granting of relief (see McDermott v City of Albany, 309 AD2d at 1005-1006; DiMarzo v Fast Trak Structures, 298 AD2d 909, 911 [2002]). We are unpersuaded that the requisite showing has been made.

The husband's contentions with regard to irreparable injury are essentially derivative. He argues that the son, who does not know that the book exists, would suffer irreparable harm in the form of emotional distress, behavioral difficulties and regression if he learned about the book because of the personal and potentially embarrassing details it contains, and that this would detrimentally impact the husband, with whom the son presently resides. Because the book had already been published before the husband filed his application, he does not seek to withdraw it from circulation; instead, he seeks to curtail the wife's promotional activities on the ground that they are likely to bring the book to the son's attention. As for the adequacy of a remedy at law, the husband acknowledges that the remedies contained in the judgment are sufficient to protect his economic interests and those of the son, but argues that they are inadequate to protect either of them from the threatened emotional and behavioral harm that could result from the son's discovery of the book's existence.

Initially, the wife contends that the son is not a party to the agreement and that the husband lacks authority to act on his

behalf.[1]   The husband responds that the son is a third-party
beneficiary in that he and the wife intended their valid and
binding agreement for the mutual management of his affairs to
benefit the son, and the son's interest in enforcement "is
sufficiently immediate, rather than incidental, to indicate the
assumption by the [husband and wife] of a duty to compensate [the
son] if the benefit is lost" (Mendel v Henry Phipps Plaza W.,
Inc., 6 NY3d 783, 786 [2006] [internal quotation marks and
citation omitted]; accord Boyd v Hall, Ltd., 307 AD2d 624, 626
[2003]).   While we agree that the son would have authority to
make an independent application to enforce the provision on this
ground, neither his present coguardians nor his court-appointed
legal counsel did so in this case.  However, after Supreme Court
placed them on notice of the husband's application, they appeared
and fully participated in the subsequent proceedings and this
appeal, supporting the husband's position and arguing on the
son's behalf that the wife's promotional activities pose a threat
of irreparable harm to the son and that injunctive relief is
appropriate.   Under these circumstances, any procedural issues
posed by the lack of a separate application on the son's behalf
are less significant to our analysis than the substantive
question of whether it has been established that injunctive
relief is necessary to avoid irreparable injury.

     In our view, the very personal information contained in the
book — such as highly specific details of the son's medical
condition and treatment and episodes of difficult behavior —
might reasonably be anticipated to cause distress to any young
adult who learned that it had been made public without his
knowledge or consent, and perhaps more so in the circumstances
presented here.  Moreover, although the book uses a pseudonym for
the son, his identity can readily be ascertained; the wife
published the book under her own name, and the text includes many
details that will easily identify the son to himself or those who
know him.  The son — who is presently a college student — is
apparently capable of reading, using the Internet, and following

---

[1]   The husband and wife were formerly the son's coguardians,
but they were both removed from these roles in 2009 and replaced
by court-appointed coguardians (see SCPA 1750-a).

media reports.  Thus, there is a clear and undeniable risk that he will someday learn about the book, whether or not the wife continues to promote it.  The parties agree that the son may be harmed by discovering the book's existence and should be protected from learning about it.  Both parties have expressed concern that the other's activities may lead the son to discover the book.  In fact, Supreme Court directed them not to inform the son about the book and warned that to do so would be "a heinous act," and the wife responded that she was "thankful" that the court had made this direction.  Nevertheless, they disagree as to whether the emotional harm that he may experience will be so severe as to constitute irreparable injury justifying a permanent injunction.  Injunctive relief is ordinarily available only to prohibit interference with property or other recognized legal rights (see generally 67A NY Jur 2d, Injunctions § 11), but is sometimes appropriate to prevent emotional distress or mental anguish in special circumstances (see e.g. Pantel v Workmen's Circle/Arbetter Ring Branch 281, 289 AD2d 917, 918 [2001]).  This may apply where, as here, the injured party has potential special vulnerabilities.  Nonetheless, we need not determine whether the threatened harm constitutes irreparable injury as a matter of law, as we are unpersuaded that the proposed remedy will be sufficiently effective to prevent it.

The wife's book was first published in 2012, and has been available for purchase online and in bookstores ever since.  Notably, despite the wife's active promotion of the book during this time, it does not appear that the son has yet discovered its existence.  It is now the ongoing existence and public availability of the book that poses the most substantial risk that the son may discover the book in the future, and — as the husband has never sought to withdraw the book from circulation — in simple colloquial terms, that horse has left the barn.  Put another way, given the book's longstanding availability and the publicity it has already received, any future restraint on additional promotional activities in which the wife may still be engaged will offer only minimal protection to the son.  Moreover, the relief sought constitutes, in effect, a prior restraint on the wife's freedom of speech; although she agreed that she would not contract for the publication of a book that dealt with the son without the husband's consent, she did not agree that she

would never express her views about the son in other contexts. To enjoin her from doing so under the circumstances presented here poses significant constitutional concerns that are not justified by the limited and imperfect protection of the son's interests that may result (compare Porco v Lifetime Entertainment Servs., LLC, 116 AD3d 1264, 1265-1266 [2014]). Accordingly, despite our determination that legal remedies for the wife's breach of the agreement are appropriate and necessary, we find no abuse of discretion in Supreme Court's refusal to grant a permanent injunction, and will not disturb it (see McDermott v City of Albany, 309 AD2d at 1005-1006; Danchak v Tuzzolino, 195 AD2d 936, 937 [1993]).

McCarthy, J.P., Lynch and Clark, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied that part of defendant's motion as sought enforcement of paragraph 36 of the parties' divorce judgment and sought remedies pursuant to said judgment; motion granted to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court