■ In the Matter of the Estate of MOHAMED K. BADRUDDIN, Deceased. YASMIN KOOLSAM BADRUDDIN, Respondent; YASMIN NURANI KADERALI BADRUDDIN et al., Appellants. (And Another Related Proceeding.) [60 NYS3d 528]—

Garry, J.P. Appeal from an order of the Surrogate's Court of Warren County (Hall Jr., S.), entered April 22, 2016, which, in a proceeding pursuant to SCPA article 5, among other things, denied respondents' motion to vacate a prior stipulation of settlement.

Mohamed K. Badruddin (hereinafter decedent) and petitioner were married in Nairobi, Kenya in 1970 and are the parents of a daughter who was born in Kenya in 1971. Decedent entered the United States in 1974. Between 1974 and 1977, he filed several documents with the Immigration and Naturalization Service that identified petitioner as his then current spouse; however, in a 1982 filing, he asserted that he and petitioner had been divorced in Kenya in 1975. In 1984, decedent married respondent Yasmin Nurani Kaderali Badruddin (hereinafter Nurani) in Florida. They had two daughters, respondents Zahara Badruddin and Salimah Badruddin.

Decedent died in May 2007, leaving a will that named "[his] wife, Yasmin K. Badruddin" as the sole beneficiary and executor of his estate. Thereafter, Nurani petitioned for probate and letters testamentary in Surrogate's Court, estimating decedent's estate to be worth approximately $35,000. The court admitted the will to probate and issued letters testamentary to Nurani. In June 2009, Nurani filed a sworn list of assets that, contrary to her previous assessment of the estate's value, reported that decedent owned nine parcels of real estate at the time of his death with a total value of $2,775,000.

In March 2009, petitioner filed a notice of claim against decedent's estate, alleging that she and decedent had been divorced in Kenya and seeking unpaid child support pursuant to a 1974 Kenyan court order.[1] Thereafter, petitioner produced what she asserted were official Kenyan documents showing that there was no record in Kenya of any divorce judgment dissolving her marriage to decedent. In January 2013, she filed a petition alleging that she was still married to decedent at the time of his death and seeking to exercise her elective share; she also sought revocation of Nurani's letters testamentary, issuance of letters testamentary to petitioner, and a declaration that petitioner was decedent's wife and the "Yasmin K. Badrud-

---

1. Surrogate's Court later dismissed the child support claim.

din" who was identified in the will as the sole beneficiary.[2] Nurani filed a motion to dismiss the petition, relying upon, among other things, a document that she asserted was a 1973 Kenyan divorce decree dissolving the marriage of petitioner and decedent. Petitioner opposed the motion, and each party challenged the validity of the other's purported Kenyan records. In July 2014, Surrogate's Court, as pertinent here, denied Nurani's motion insofar as it sought to dismiss petitioner's right of election claim, and ordered a hearing to determine the identity of the surviving spouse. Nurani filed a notice of appeal.

Surrogate's Court issued multiple orders throughout the litigation directing Nurani to file an accounting or to show cause why her letters testamentary should not be revoked for her failure to do so.[3] Nurani did not comply with any of these orders; no accounting was ever filed, nor did she comply with numerous other court orders and discovery demands seeking information about estate assets. Further, in March 2013, the court issued an order prohibiting Nurani from transferring any estate assets. Following the entry of this order, Nurani executed deeds that conveyed all but one of the properties that she had previously listed as estate assets to Salimah Badruddin. During the same time period, respondents allegedly found eight deeds among decedent's effects that were dated before decedent's death and purported to be inter vivos transfers of all but one of the listed properties from decedent to Nurani.[4] Respondents recorded these deeds. Additionally, Salimah Badruddin sold a property that Nurani had previously listed as an estate asset to a third party for $925,000, and deposited the proceeds in a personal account. Respondents did not advise Surrogate's Court or their counsel of any of these transactions; they were ultimately discovered in the fall of 2014.

In October 2014, based upon its determination that Nurani had disobeyed multiple court orders, Surrogate's Court revoked her letters testamentary and appointed a special administrator to handle the estate. The court again ordered Nurani to file an accounting of her handling of decedent's estate within 60 days. She did not do so.

An evidentiary hearing was scheduled for November 7, 2014 to address petitioner's application to hold respondents in contempt for their violations of court orders. On that day,

---

2. Petitioner and Nurani have similar names.

3. Petitioner asserts that there were at least eight such orders.

4. An action was later commenced in Supreme Court to determine the validity of these deeds.

rather than holding the hearing, the parties entered into a so-ordered stipulation. In this stipulation they agreed that petitioner would be treated as the surviving spouse for purposes of exercising her right to an elective share, and that Nurani would be the beneficiary under decedent's will. Nurani agreed to waive all objections to petitioner's claim to an elective share and to withdraw her appeal from the court's denial of her motion to dismiss that claim; petitioner withdrew her claim that she was the beneficiary of the will, and waived any right to challenge the will's validity or seek its construction. The parties agreed that they would continue to litigate the issue of what property constituted estate assets.

In March 2015, Surrogate's Court held Nurani and Salimah Badruddin in contempt of court for violating court orders. They were given several opportunities to purge themselves of contempt by providing certain information to the special administrator, but did not do so. In June 2015, the court once again ordered Nurani, among other things, to file an accounting before an August 2015 deadline. She then retained new counsel. The court extended the deadline once more, but instead of filing an accounting, respondents filed an order to show cause seeking, among other things, to set aside the stipulation and to renew and/or reopen Nurani's motion to dismiss petitioner's claim to an elective share. Petitioner opposed the application and filed an application for an order, among other things, holding Nurani in civil and criminal contempt, which respondents opposed. In April 2016, Surrogate's Court denied respondents' application in its entirety and granted petitioner's application by holding Nurani in civil and criminal contempt and, among other things, precluding her from contesting the assets and valuation of the estate.[5] Respondents appeal.

Respondents contend on appeal that Surrogate's Court erred by declining to set aside the stipulation, that the stipulation improperly allowed petitioner to seek her right of election, and that the court was biased against respondents.[6] We find no merit in these claims. Because stipulations of settlement promote judicial economy and predictability in litigation, they are favored by the courts and are "generally binding on parties that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a

---

**5.** This Court denied respondents' motion for a stay (2016 NY Slip Op 87183[U]).

**6.** As respondents' brief raises no challenges to Surrogate's Court's other determinations, those issues are deemed to be abandoned (*see Matter of Rebecca O. v Todd P.*, 309 AD2d 982, 983 [2003]).

properly subscribed writing or enter the stipulation orally on the record in open court" (*McCoy v Feinman,* 99 NY2d 295, 302 [2002]; *accord Adsit v Wal-Mart Stores, Inc.,* 79 AD3d 1168, 1168 [2010]; *see* CPLR 2104). A stipulation will not be set aside in the absence of "cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident," a showing of unconscionability or a conflict with public policy (*Hallock v State of New York,* 64 NY2d 224, 230 [1984]; *see Matter of State of New York v Public Empl. Relations Bd.,* 137 AD3d 1467, 1469 [2016]; *Blanchard v Sultan,* 111 AD3d 1202, 1203 [2013]).

Here, the record reveals that Nurani freely negotiated and understood the stipulation. Respondents' counsel proposed the terms of the stipulation by correspondence dated several days before the scheduled hearing. Following negotiations between their respective counsel, petitioner and Nurani signed the written stipulation on the morning of the hearing. Petitioner and Nurani were present at the hearing with their counsel. The terms of the stipulation were read into the record in their presence, and counsel for both parties offered further detail clarifying the terms of the agreement. Nurani confirmed during questioning by Surrogate's Court that she had discussed the stipulation with her counsel before the hearing, understood its terms and had no questions. Petitioner likewise acknowledged her opportunity to consult with her counsel and her understanding of the stipulation. Following this colloquy, Surrogate's Court "so ordered" the stipulation. Respondents did not appeal.

Respondents have not established any grounds for setting aside the stipulation. They contend upon appeal that the stipulation was affected by collusion or a conflict of interest in that their counsel was allegedly influenced to encourage Nurani to enter into the agreement by an offer of employment that had been extended to counsel by the special administrator. However, the record reveals that no discussion of potential employment took place until after the stipulation had been signed. The special administrator averred by affidavit that he first learned of a vacancy in his firm on the day *after* respondents' counsel had already proposed the settlement terms to petitioner's counsel, and that the special administrator first advised respondents' counsel of the vacancy approximately a week after the stipulation of settlement had been signed. Respondents' counsel sent his resume to the special administrator, who forwarded it to his partners, but he and respondents' counsel had no further discussion of potential employment, and no job offer was ever extended to him. As this showing was

uncontradicted by admissible evidence[7] and demonstrated that the stipulation could not have been affected by the discussion of potential employment, respondents failed to establish any impropriety in their counsel's conduct or other ground for setting aside the stipulation (*see Rainone v Davenport*, 121 AD3d 1444, 1445 [2014]; *Blanchard v Sultan*, 111 AD3d at 1203).

Respondents' claim that the stipulation is unconscionable is likewise without merit. Both parties, as previously noted, entered into the agreement voluntarily and with the advice of counsel. Both parties gave up certain claims, and both parties gained benefits. Specifically, although Nurani gave up the ability to contest petitioner's elective share of decedent's estate, petitioner likewise gave up any challenge to Nurani's right to the remainder of the estate as the sole beneficiary under the will. Moreover, by entering into the stipulation, Nurani avoided the expense and delay of litigating the surviving spouse issue, as well as the risk of an unfavorable outcome. A party's second thoughts after voluntarily entering into a stipulation do not constitute grounds to set it aside, and we find no unfairness or imbalance that would "shock the conscience" (*Bishopp v Bishopp*, 104 AD3d 1121, 1123 [2013] [internal quotation marks and citation omitted]; *see Fox v Merriman*, 307 AD2d 685, 686-687 [2003]).

Respondents next contend that Surrogate's Court erred in permitting petitioner to seek her right of election, as she did not raise the claim within the applicable time limitations (*see* EPTL 5-1.1-A [d] [1], [2]; *see generally Matter of Sylvester*, 107 AD3d 903, 904 [2013]). This issue, however, is not properly before this Court, as Surrogate's Court did not determine that petitioner had a right of election. Rather, by stipulation, respondents waived any objection that Nurani "has asserted or could assert" to petitioner's claim to an elective share, including her appeal from the court's previous order excusing petitioner's default in timely exercising her right to an elective share. Respondents, who did not appeal from the so-ordered stipulation, were not aggrieved by the court's denial of their motion to renew and/or reopen their previous motion to dismiss petitioner's claim to an elective share (*see Sylla v 90-100 Trinity Owner LLC*, 135 AD3d 501, 502 [2016]). In any event, "parties to a civil dispute are free to chart their own litigation course and, in so doing, they may stipulate away statutory, and even constitutional[,] rights" (*Matter of Mallinckrodt Med. v*

---

**7.** Respondents asserted by affidavit that their counsel told them that a job offer was extended to him before the stipulation was signed, but this hearsay claim was unsupported.

*Assessor of Town of Argyle*, 292 AD2d 721, 722 [2002] [internal quotation marks and citations omitted]; *accord Matter of Kaczor v Kaczor*, 101 AD3d 1403, 1404-1405 [2012]).

Finally, the record contains no evidence whatsoever that Surrogate's Court was biased against respondents. On the contrary, the court exercised considerable patience and restraint in the face of respondents' repeated noncompliance with multiple court orders and refusals to disclose information about estate assets throughout the nine-year course of this litigation. As for respondents' claim that the court exhibited bias by granting petitioner's motion to preclude them from contesting the assets and valuation of the estate, "the fact that a judge issues a ruling that is not to a party's liking does not demonstrate either bias or misconduct" (*Gonzalez v L'Oreal USA, Inc.*, 92 AD3d 1158, 1160 [2012], *lv dismissed* 19 NY3d 874 [2012]; *see Matter of Dale v Burns*, 103 AD3d 1243, 1244 [2013], *appeal dismissed* 21 NY3d 968 [2013]). The preclusion order is amply supported by the record evidence of respondents' lengthy pattern of noncompliance with discovery demands and court orders (*see Matter of Scaccia*, 66 AD3d 1247, 1250 [2009]; *Olmsted v Pizza Hut of Am., Inc.*, 61 AD3d 1238, 1241-1242 [2009]).

Egan Jr., Lynch, Mulvey and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.